THE STATE v. ORLA (DYKE) OLIVER, Appellant.—64 S. W. (2d) 118.

Division Two, October 28, 1933.

*Sharp & Baynes* for appellant.

*Roy McKittrick,* Attorney-General, and *John W. Hoffmann, Jr.,* Assistant Attorney-General, for respondent.

1232

COOLEY, C.—By information filed in the Circuit Court of New Madrid County defendant was charged with the crime of rape, alleged to have been committed upon the prosecutrix forcibly and against her will. Upon his application a change of venue was granted to the Circuit Court of Pemiscot County where, upon trial, he was convicted and sentenced to two years' imprisonment in the penitentiary. He appeals. The only point urged for reversal is the alleged insufficiency of the evidence. The State's evidence tends to show the following:

At the time of the alleged rape, April 5, 1931, prosecutrix was sixteen years of age, defendant between seventeen and eighteen, both unmarried. At the trial about a year later, prosecutrix testified she had not been weighed for "a good little bit," but when last weighed her weight was 118 pounds. No other evidence as to her size and strength appears in the record. She testified in substance:

On said April 5, defendant in a Model A Ford sedan automobile took prosecutrix and his sister and the latter's husband and their baby from a place where prosecutrix had been working to the home of the sister and her husband, situated on or at the end of a lane leading from a highway called the Broadwater road. Leaving his sister and her family at their home he started back with the prosecutrix toward her home. About half-way from the sister's home to the Broadwater road defendant stopped his car. Prosecutrix was then on the front seat with him. He said nothing about why he was stopping. She thought he was going to look at his tires as he had done several times previously on the trip. The place was about a quarter of a mile from the sister's home and no other house nor any person was in sight. Without at first saying anything defendant sat down on prosecutrix's lap and seized both her arms. He then solicited sexual intercourse of her and she refused. He "said he would anyhow." He forced one of her arms behind her and her shoulders against the back of the seat; "he twisted my arm, twisted this one and put it behind me and put his shoulder up against me and pressed me back, and he kept holding this arm, twisting it and wrestling me around, he wrestled me down. I tried my best to get away from him and tried to make him behave and begged him to behave and he wouldn't do it." While holding prosecutrix's shoulders pressed by his shoulder against the back of the seat, with one of her arms behind her and between her body and the seat back so that she could not extricate it, the defendant "wrestled her around" until he succeeded in getting his body between her legs and accomplishing penetration. In view of the nature of defendant's contention the details of the struggle need not be set out. Prosecutrix's

testimony tended to show that she resisted to the extent of her ability. She testified that she cried "loud" during the struggle; that he hurt her; that she was "sore all over" and was "in bed a week over it;" that when defendant released her she immediately tried to get out of the car, but before she could get the door open defendant started the car; that he stopped in front of a store on the Broadwater road about a half mile from where the lane joins it and there prosecutrix got out and without going into the store or seeing any one there started on foot toward her home, a mile or so distant. On the way she stopped at the house of a neighbor, named McKeil, and waited there for her father and mother who, it appears, she knew were coming that way. She knew the McKeils, but not intimately, and did not tell them what had occurred. She could not say just how long she waited for her parents, but it was less than an hour. When they came she accompanied them home, and either on the way or immediately after their arrival there told them defendant had ravished her. She testified that in the struggle with defendant he tore her bloomers and that she bled as a result of the intercourse. Her mother testified that when they reached home and prosecutrix had informed her of what had happened she examined prosecutrix's bloomers and found them torn and blood stained; that when she and her husband found prosecutrix at McKeil's "she was awfully sick." Prosecutrix and her mother both testified that prosecutrix was not menstruating at or near the time of the alleged assault.

Three witnesses, boys near defendant's age, testified that about a month before the alleged offense defendant had told them he intended to get the prosecutrix out car riding and have sexual intercourse with her and if she would not consent he would "throw her down and take it away from her."

Prosecutrix was not impeached save for the testimony of a young man who testified that some time before the trial she had said that "she wouldn't swear against Dyke Oliver if it hadn't been for her father," a statement prosecutrix denied having made.

Defendant fled the night following the alleged assault, which had occurred in the afternoon, so that the warrant for his arrest, which had been promptly issued, could not then be served. He returned and gave bond eight or ten days later.

Defendant, testifying for himself, denied that he had assaulted or had carnal knowledge of prosecutrix and denied having threatened to do so. He introduced evidence tending to prove that he was of good character and evidence of some circumstances tending to contradict prosecutrix's story; also evidence tending to impeach one of the State's witnesses who had testified to the threat above mentioned. In explanation of his flight he testified that he feared violence from prosecutrix's father, having been told that the latter had threatened him upon hearing prosecutrix's complaint. Defend-

ant's evidence need not be further epitomized as the jury evidently disbelieved it, crediting that of the State. It was the province of the jury to determine the credibility of the witnesses and the weight of the evidence.

Appellant contends that the State failed to produce any substantial evidence that the alleged sexual act, if it occurred, was accomplished by force and against the will of prosecutrix. He argues that it would have been impossible for him to have had intercourse with her forcibly and against her earnest resistance in a Ford car and in the manner in which she testified it was accomplished; that her testimony is contrary to human experience and could not be true. We are in effect urged to say judicially, in spite of the verdict of the jury, that rape cannot be perpetrated in the manner and under the circumstances and conditions testified to by the prosecutrix. We cannot so hold. We may well say here, as this court said of a somewhat similar contention in State v. Wade, 306 Mo. 457, 468, 268 S. W. 52, 55: "That is a subject which every man on the jury knew as much about as any other man or set of men." Save for the fact that prosecutrix weighed 118 pounds, "a good little bit" before the trial, probably less at the time of the assault when she was but sixteen years of age, we are not informed as to her size or strength and there is no evidence as to the size and strength of the defendant. Prosecutrix told a straightforward story on the witness stand which was not shaken or weakened by cross-examination. No attempt was made to impeach her except for the testimony of one witness that she had said she would not swear against the defendant "if it hadn't been for her father," a statement she denied having made. If she made it she may not have meant thereby that the charge she had made against defendant was not true. Her testimony is corroborated in important particulars by her mother's testimony that prosecutrix appeared sick when the mother found her at McKeil's and that her underclothes were torn and blood stained, and further, by the fact that she made complaint to her father and mother as soon as opportunity offered. The fact that she did not complain to the McKeils, with whom she was not well acquainted, when she knew she would soon be with her parents, is only natural and signifies nothing against the truth of her story. There was also evidence that the defendant had threatened to commit the offense. The only motive suggested by appellant's counsel that prosecutrix could have had for falsely accusing appellant of having ravished her is founded upon certain testimony of his. He testified that she herself stopped the car by turning off the ignition and when he asked her why she did so she replied: "You had just as well talk to me as some other bitch up at Parma;" that he "had a date" with a girl at Parma for five o'clock that evening and could not tarry; that he started the car, drove on to the store and stopped and prosecutrix

asked if he was going to take her the rest of the way home and (apparently without waiting for a reply) got out of the car without saying "another word." Prosecutrix denied that testimony. Appellant's counsel suggest that she was jealous of his attentions to the girl at Parma. He had never called upon prosecutrix or escorted her anywhere or shown her any attentions prior to this occasion nor is there any evidence tending to show that she cared for or was interested in him. Under these circumstances the suggestion of jealousy as prosecutrix's motive for making a charge of this kind against appellant, with the necessarily resultant embarrassment and unpleasant notoriety to herself, especially when she was not even suspected of having been guilty of any conduct calling for explanation, does not seem convincing. Evidently it did not appeal to the jury.

Appellant's argument that sexual intercourse under the conditions and circumstances testified to by prosecutrix would be impossible without the consent, even the assistance, of the female, assumes that, according to prosecutrix's testimony, her *whole body* was pressed against the back of the automobile seat throughout the struggle to which she testified and when she claims appellant effected penetration. That assumption is not warranted. She did say: "He put his shoulder against me and pressed me against the car seat in the back," but there is nothing in her testimony to exclude the idea that in the struggle the lower part of her body was pulled forward to the edge of the seat sufficiently to permit penetration. And it must be remembered that slight penetration, so there be actual penetration, of the female organ by that of the male, if accomplished by force and against her will, is sufficient to constitute rape. Twelve jurors and the trial judge saw the prosecutrix and the defendant and were able to judge their relative size and strength. They heard and saw the witnesses. They did not believe that prosecutrix's testimony could not be true or that it was so improbable or contrary to human experience as to be unworthy of belief. There is nothing in the record to indicate passion or prejudice on the part of the jury. We cannot judicially say that the alleged rape could not have been perpetrated as prosecutrix testified it was perpetrated. Without so saying we cannot hold that the evidence in this case is insufficient to make a submissible case and to sustain the verdict.

No other question is urged on this appeal nor is any other assignment of error sufficiently preserved in the motion for new trial to present it for review. The information, verdict and judgment are in due form and sufficient. The judgment of the circuit court is affirmed. *Westhues* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by Cooley, C., is adopted as the opinion of the court. All the judges concur.