THE STATE v. HARVEY MITCHELL, Appellant.—96 S. W. (2d) 341.

Division Two, August 20, 1936.

*Bagby & Burton* and *Luman Spry* for appellant.

*Roy McKittrick,* Attorney General, *William W. Barnes* and *James L. HornBostel,* Assistant Attorneys General, for respondent.

TIPTON, P. J.—In the Circuit Court of Howard County, an information was filed under Section 3999, Revised Statutes 1929, charging the appellant with forcibly ravishing one Mary Ann Constantz on July 9, 1933. A change of venue was granted to Randolph

230

County, where on December 18, 1934, the appellant was found guilty and his punishment assessed at ten years in the State penitentiary.

At the time of the alleged offense, the prosecutrix was sixteen years of age and lived with her parents at Fayette, Missouri.

About seven-thirty P. M., on that date, the appellant, in company with Emery Smith and Virginia Cady drove an automobile to the prosecutrix' home and Virginia Cady asked the prosecutrix to go riding with them. After obtaining permission from her mother she joined the party for a ride and got in the front seat of the car with the appellant. Prior to this time the prosecutrix and the appellant were not acquainted. The appellant drove the automobile to the golf links. After arriving at the golf links, the appellant stopped the car near a pond and spread a blanket upon the ground, and all four of the occupants of the car sat upon it. The appellant offered the prosecutrix some whiskey which she refused. Prosecutrix told appellant that she was sick and wanted to go home.

Prosecutrix testified that she and the appellant got into the car and drove around the golf links twice, the appellant stated that he was looking for the way out.

"A. He stopped the car and grabbed me and I screamed and he choked me and said he would kill me."

"A. I started to get out of the car and he threw me down and spread my legs apart and shoved my Kotex aside and put his private parts in mine."

On cross-examination she stated: "A. He grabbed me and choked me and I screamed, and he said if I screamed again he would kill me." "Q. Now, that is the time I believe you stated that you heard voices from the road? A. Yes, it was."

"Q. Did you keep on screaming, did you? A. No, after he threatened to kill me . . . I didn't know whether he would kill me or not."

When the prosecutrix screamed, someone on the road answered.

After this occurrence, appellant took prosecutrix to the blanket where the other parties were. Prosecutrix told Virginia Cady what had happened. Virginia cursed the appellant and told him to take prosecutrix home. The two couples got into the automobile and drove to prosecutrix' home. The prosecutrix immediately told her mother that the appellant had ruined her life. The sheriff of Howard County was notified and he arrested the appellant shortly after the prosecutrix arrived home. The evidence showed that the prosecutrix' dress was torn.

The appellant admitted that he had intercourse with her but contended he did so with her consent. The evidence showed that the appellant was suffering with gonorrhea and that the prosecutrix contracted this disease. Other pertinent facts will be stated in the course of this opinion.

I. From the above facts, we are of the opinion that there was sufficient substantial evidence to sustain the verdict of the jury. [State v. Lindsey, 80 S. W. (2d) 123; State v. Oliver, 64 S. W. (2d) 118; 333 Mo. 1231; State v. Worden, 56 S. W. (2d) 595, 331 Mo. 566; State v. Taylor, 320 Mo. 417, 8 S. W. (2d) 29; Sec. 3999, R. S. 1929.]

II. Error is assigned because the trial court permitted the prosecuting attorney to ask witnesses who testified concerning the appellant's good character, whether they had heard rumors to the effect that the appellant had been convicted of violating the law, that he had been in frequent trouble with the officers of Slater; that he and others were suspected of the robbery of the Grime's store at Arrow Rock; that he was engaged in a fight at Glasgow about a year and a half ago; that he was involved in the violation of the law sometime prior to July 9, 1933, in which his brother, Tom, was sent to the penitentiary; that he had trouble with a girl named Lorraine Taylor in Marshall a few years ago. All the witnesses answered these questions in the negative.

The extent to which such cross-examination may go is largely within the discretion of the trial court. Such questions are permissible to test a witness vouching for the good character of the appellant. If a witness had admitted that he had heard of such alleged acts of misconduct, such admissions would tend to weaken his testimony that the appellant's reputation was good. [State v. Parker, 172 Mo. 191; 72 S. W. 650; State v. Harris, 209 Mo. 423, 108 S. W. 28; State v. Phillips, 233 Mo. 299, 135 S. W. 4; State v. Pine, 18 S. W. (2d) 48; State v. Harris, 22 S. W. (2d) 1050, 324 Mo. 139.]

"It is said that the court erred in permitting the State to ask defendant's character witnesses, upon cross-examination, whether they had heard that defendant had been charged with other crimes not charged in the information. The record shows that witnesses who testified that defendant bore a good reputation for morality were asked if they had not heard it rumored that defendant had lived in Kansas City with a woman other than his wife, and if they had not heard that he was the father of an illegitimate child living at or near West Plains. One or two of such witnesses admitted that there had been vague and indefinite rumors of that sort going around the sewing circles.

"There was no error in permitting that sort of examination to test a witness vouching for the good character of the defendant. If the witness admitted that he had heard of such alleged acts of misconduct, such admission would tend to weaken his testimony that defendant's reputation for morality was good. The extent to which such cross-examination may go is largely within the discretion of the trial court." [State v. Cooper, 271 S. W. 471.]

In the case of State v. Gurnee, 309 Mo. 6, 274 S. W. 58, l. c. 60, we said:

"Neither the Cooper case nor any of the cases therein cited made it a prerequisite that rumors must actually have been afloat. It would clearly be improper to make any of such proof prior to the asking of such question, or at any other time. The theory advanced by defendant would make the propriety of asking character witnesses about rumors concerning a defendant on trial, which would tend to show that he did not possess a good reputation, depend upon the character of the answers made by the witnesses. In other words, if the witness answered that he had heard such rumors, then no error would have been committed by the court in permitting the question to be asked and in requiring it to be answered; but, if the question be answered in the negative, the court committed reversible error. Such cannot be and is not the rule. The assignment is overruled."

The prosecuting attorney owes the appellant, as well as the State, a duty to see that he has a fair and impartial trial. We certainly cannot say that these questions asked the appellant's character witnesses were not asked in good faith. They met with the approval of the trial judge. We rule this point against the appellant.

III. The appellant states that the "verdict of the jury is not based upon the evidence, but is the result of passion and prejudice brought about by improper questioning and conduct of counsel for the State and the improper ruling of the court thereon." The improper questioning complained of was the cross-examination of the appellant's character witnesses. We have just ruled that the State had a right to ask such questions. If it was not error to ask such questions, we are unable to see how the verdict could be the result of passion and prejudice and not based upon the evidence in the case.

Nor is there anything in the closing argument of the attorneys for the State that would indicate that the verdict is the result of passion and prejudice. The trial court heard all the argument, both of the appellant and the State, and was in a better position to know whether the argument on part of the State was an attempt to answer the statements made by the appellant's attorneys. The appellant did not complain that the argument was improper and prejudicial, nor did he request that the jury be discharged. The entire argument is not before this court. Consequently, the trial court was in a better position to say whether the argument was prejudicial than we can possibly be, with only a fragment of the argument before us. [State v. Dalton, 23 S. W. (2d) 1.]

IV. The State produced Dr. Shaw as a witness. He testified that he had treated the prosecutrix about six months prior to the alleged

rape for heart trouble. That on the night of the alleged rape he examined her and found that she was menstruating and was very nervous. That he treated her to prevent her from becoming infected with a gonorrheal infection. That in about ten days she developed a Bartholin abscess, which is a form of gonorrheal infection. He also testified that she was almost constantly menstruating since the time of the alleged rape. And in his opinion she would not fully recover. That she was in the hospital in September of that year for treatment.

The point is made by the appellant that over sixty days had elapsed since the date of the alleged rape, that the evidence at that time as to the prosecutrix' condition should have been excluded on the ground of remoteness.

This witness further testified that in his opinion the cause of her excessive menstruation was caused by her being forcibly ravished and could not have been caused by a normal act of intercourse. In this case the appellant admitted the act of intercourse, but claims that it was accomplished with the consent of the prosecutrix. So the sole question for the jury to determine was whether the act of intercourse was accomplished by force. As this evidence tended to show that the appellant used force to accomplish his purpose, we believe it was admissible.

In the case of State v. Dalrymple, 270 S. W. 675, 1. c. 678, we said:

"The physician, who examined and treated prosecutrix after the alleged assault and who had been treating her for painful menstruation for about two years prior, was permitted to testify that prosecutrix was a virgin when he examined her about a month before the alleged assault, and also to testify that a venereal disease developed about 8 days after the alleged assault, and that the usual time required to develop symptoms of such disease is from 7 to 10 days after exposure.

"The testimony of virginity shortly before the assault tended to corroborate the testimony of the physician as to the recent destruction of the hymen. The fact and time of development of the venereal disease tended to fix the time of exposure. The fact that the evidence of venereal disease may have added gravity to defendant's alleged crime is no reason why testimony relating to the appearance of the disease, when it was competent for other reasons, should have been excluded."

We are of the opinion that the testimony of Dr. Shaw does not constitute reversible error.

V. The appellant assigns as error the testimony of Tom Gaines, the sheriff of Howard County and Walker Pierce, the prosecuting attorney of that county and of Dr. W. J. Shaw. Gaines and Dr.

Shaw testified that on the night of the appellant's arrest they saw blood on his clothes. The next morning the sheriff took the appellant to the office of the prosecuting attorney and was informed that he was charged with rape. After denying his guilt, he was told by the prosecuting attorney that "he would have a hell of a time explaining the blood found on his clothing." The appellant said that he could explain that, he had a venereal disease. Pierce, Gaines and Dr. Shaw testified to the above statement after the court heard evidence (out of the presence of the jury) as to whether the statements were voluntarily made. At this preliminary examination the appellant admitted that no threats were made, nor were any promises made to him.

The appellant contends that this testimony was inadmissible because at the time it was made he was under arrest, and that he did not have an opportunity to consult an attorney and therefore he was compelled to give testimony against himself in violation of his constitutional rights.

As above stated the appellant admits that he was not threatened nor were any promises made to him, we are of the opinion that the statements made by the appellant in the prosecuting attorney's office were voluntary and were admissible.

"As the confession was voluntary, it was not inadmissible because accused was in custody or under arrest at the time (State v. Brooks, 220 Mo. 74, 119 S. W. 353), even though the arrest may have been under invalid process, or without any process or legal right (State v. Raftery, 252 Mo. 72, 158 S. W. 585). Nor is a free and voluntary confession of guilt to be excluded merely because the answers were elicited by questions put to defendant by police officers or others, even though the questions assumed the guilt of accused. [State v. Thomas, 250 Mo. 189, l. c. 211, 157 S. W. 330.] If the confession was voluntary, the fact that the officer did not caution or warn the accused that it might be used against him does not render the confession inadmissible. [State v. Barrington, 198 Mo. 23, l. c. 109, 95 S. W. 235.]" [State v. Hoskins, 327 Mo. 313; 36 S. W. (2d) 909, l. c. 910.]

In State v. Askew, 331 Mo. 684, 56 S. W. (2d) 52, l. c. 54, we said:

"The further objection that the prosecuting attorney did not inform appellant that he had the right to consult an attorney before he signed the written statement has been overruled and is without merit. [State v. Robinson, 263 Mo. 318, 172 S. W. 598.]"

At the time the appellant was in the office of the prosecuting attorney, Dr. Shaw, examined him to see if he had a venereal disease. The court did not permit this witness to state his finding to the jury.

Finding no reversible error in the record, the judgment of the trial court is affirmed. All concur.