STATE of Missouri (Plaintiff), Respondent,

v.

James H. LANEY (Defendant), Appellant.

No. 56546.

Supreme Court of Missouri, Division No. 1.

Feb. 11, 1974.

Motion for Rehearing or to Transfer to Court en Banc Denied March 11, 1974.

**453**

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for plaintiff-respondent.

Terry J. Flanagan, Clayton, for defendant-appellant.

HOLMAN, Judge.

Defendant was charged with the offense of forcible rape. See § 559.260, RSMo 1969, V.A.M.S. Upon trial the jury found him guilty and assessed his punishment at imprisonment for a term of 60 years. Defendant has appealed. We have jurisdiction because the appeal involves a felony conviction, and was taken prior to January 1, 1972, the effective date of new Art. V, § 3, Mo.Const., V.A.M.S. We affirm.

The defendant does not question the sufficiency of the evidence and hence we need not state the evidence in detail. Prosecutrix, age 57, was employed as a cashier on the "Steamer Admiral" in St. Louis. On Thursday, August 22, 1968, she worked the shift beginning at 7:45 p.m. and ending at 12:15 a.m. Upon leaving work she walked a short block to where her car was parked and, as she unlocked the door of the car, a young Negro man approached whom she later identified as defendant, and by threatening to kill her, pushed her into the car and forced her to lie on the floor while he drove the car away. Prosecutrix testified that after he had driven about ten minutes he stopped the car, forced her to remove her undergarments, repeatedly threatened to kill her, and then forced her into a position for intercourse on the front seat of the car; that when his sexual organ entered her she screamed and that he then threatened to choke her; that she began to bleed from the vagina and could feel her ribs crack from the weight of his elbows; that after completing that act he drove around for another period of time and again assaulted her. About one a.m., defendant stopped the car at Southwest Bank, pushed her out, and drove away. She made her way to a nearby service station and the attendant there stopped a police cruiser which took her to City Hospital. Upon examination there she was found to have fractures in the left chest

and was bleeding from the vaginal canal. She received emergency treatment and was then transferred to St. Luke's Hospital. She further testified that she had a good opportunity to observe defendant's face a number of times; that her car was a 1964 white Chevrolet, and when defendant first drove it she observed him adjust the rear vision mirror.

On July 17, 1970, prosecutrix viewed a lineup at the police station and identified defendant from a lineup as being the person who had assaulted her.

There was testimony by various policemen that prosecutrix' car was found on August 27, 1968, about 4 a.m., parked in front of 5408 Bartmer; it later developed that this was the address of defendant's mother. A fingerprint expert was able to lift two fingerprints from the rearview mirror of the car and after defendant was arrested and his fingerprints obtained, an expert on comparing fingerprints testified that the prints taken from the car matched defendant's fingerprints.

Dr. Belew, a gynecologist, testified that he saw prosecutrix in the emergency room at St. Luke's Hospital; that upon examination he found that she had an extensive tear in the vagina and was bleeding; that a short time later he performed surgery, making an incision and using numerous sutures to stop the bleeding; that she remained in the hospital from August 23 to September 2. Dr. Belew further testified that it would require considerable force to cause the injuries the prosecutrix sustained.

Defendant testified in his own defense and denied that he had ever seen the prosecutrix until he saw her in the courtroom. Obviously, in an effort to explain the presence of his fingerprints in prosecutrix' car, he stated that he had been in a 1964 white Chevrolet in August 1968; that he had been in the market for a car and at that time was approached by a man he knew only as "Bootsy" who had tried to sell him the car; that he drove the car around the block to "try it out" and told Bootsy that he would buy the car and would have the money the next Friday, but that he never saw Bootsy again.

The sole point briefed by defendant is that the trial court committed prejudicial error in admitting the testimony of Dr. Belew concerning the nature of the injuries sustained by prosecutrix and the treatment administered. It is said that such was immaterial, irrelevant, highly prejudicial, and inflammatory. While the doctor used a drawing of a human body in illustrating in some detail the condition of prosecutrix and his treatment, our statement of facts contains a reasonable summary of his testimony. The objection and ruling is as follows: "Mr. Flanagan: Your Honor, I am going to enter an objection at this point. I feel this line of questioning is immaterial. We have already established that the woman was raped by the previous witness from City Hospital and since this is for rape, we are just making the thing accumulative by adding on this additional—The Court: Overruled."

Neither of the two cases cited by defendant support his contention. In State v. Pearson, 270 S.W. 347 (Mo.1925), it was held reversible error for the court to permit the prosecuting attorney in a murder case to repeatedly exhibit the bloody clothing of deceased to the jury and to use them in his argument. The other case, Hungate v. Hudson, 353 Mo. 944, 185 S.W.2d 646 (1945), was a civil suit which held it was error to permit the defendant to cross-examine plaintiff as to why he filed the suit in St. Louis rather than in his home state of Illinois.

■ It is well settled, as a general rule, that evidence concerning the physical condition of a rape victim is admissible. In State v. Chandler, 314 S.W.2d 897 (Mo.

455

1958), it is said at p. 901, that "the defendant asserts the court erred in permitting Dr. William H. Robey to testify as to the results of the physical examination he made of Miss Robbins about noontime on Sunday. Evidence of Miss Robbins' physical condition following the alleged attack was admissible. State v. Burton, 355 Mo. 792, 198 S.W.2d 19, 21 [5]; State v. Mitchell, 339 Mo. 228, 96 S.W.2d 341, 343 [7]; State v. Parsons, Mo., 285 S.W. 412, 414 [5]." It has occurred to us that it might be contended that the rule would not apply in this case where prosecutrix submitted as a result of fear, rather than forcibly resisting. In answer to that, however, we note that evidence of that nature is held to be admissible in statutory rape cases where force is not an issue. See State v. Burton, 355 Mo. 792, 198 S.W.2d 19 (1946), and State v. Sanford, 124 Mo. 484, 27 S.W. 1099 (Mo.1894).

We rule that the court properly admitted the evidence. It tended to corroborate the testimony of prosecutrix, and the extent of the injuries indicated the force and violence exerted by defendant even though prosecutrix was not actively resisting. Moreover, even if we should assume that the testimony was not admissible, it is our view that its admission would not have been prejudicial. This for the reason that most of the facts contained therein had already been admitted without objection. Her injuries were described in the records of City Hospital, and throughout the transcript there are repeated references to the fact that prosecutrix had vaginal bleeding from the time of the first assault until the operation was performed at St. Luke's Hospital. The error, if any, in admitting evidence of facts shown by other evidence, without objection, is harmless. Boten v. Brecklein, 452 S.W.2d 86 [21] (Mo.1970).

The judgment is affirmed.

All concur.