STATE of Missouri,
Plaintiff-Respondent,

v.

Stanley TAYLOR, Defendant-Appellant.

No. 64911.

Supreme Court of Missouri,
En Banc.

Jan. 17, 1984.

Henry B. Robertson, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Theodore A. Bruce, John Morris, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

GUNN, Judge.

Defendant was convicted of forcible rape in violation of § 566.030, RSMo Supp.1982 (effective 1980). During the course of trial, a psychiatrist testifying for the state was permitted to venture an opinion that the prosecutrix bore the marks of a condition known as "rape trauma syndrome" [1] arising out of an attack by the defendant. The Missouri Court of Appeals, Eastern District,

1. The term "rape trauma syndrome" gained prominent exposure in A. Burgess and L. Holmstrom, *Rape Trauma Syndrome,* 131 Am.J. of Psychiatry 981 (September 1974); the acute phase and long term reorganization process that occurs as a result of a forcible rape.

in a per curiam opinion gave thorough treatment to the issue of the admissibility of the rape trauma syndrome evidence and concluded that it should not have been admitted. By reason of general interest and importance, the Eastern District transferred the case to this Court, and we consider it as if an original appeal. Mo. Const. art. V, § 10.

Under the circumstances presented for review, we reverse and remand for a new trial. We also note the excellent research provided by the Eastern District's opinion and draw substantially from it.

The night of the alleged attack was the first for the prosecutrix at working as a solo bartender at Mary's Moonlight Lounge in St. Louis. She had observed the defendant, who was employed as a factotum in the bar, but had little conversation with him during the evening.

The prosecutrix related the following pertaining to the attack upon her.

Between 11:30 p.m. and midnight, all the customers had left, and defendant asked the prosecutrix to step from behind the bar so he could ice the beer and empty the trash. As the victim came around the bar, defendant knocked her to the floor with a single blow of his fist between her eyes. Though the victim resisted, defendant overpowered and raped her. The rape complete, defendant called a cab for the prosecutrix which she took home.

Upon arriving at her home, the prosecutrix called police and through tears and visible upset related the incident. Police escorted the prosecutrix back to the bar where defendant was found sitting alone, seemingly sangfroid while sipping his beer. The victim's personal effects were on the floor.

A hospital examination of the prosecutrix revealed a cut lip, bruises and swelling of her forehead and scratches on her neck. Sperm was in the victim's vagina and seminal fluid was found on her undergarments and those belonging to defendant.

Defendant offered no evidence, but the design of cross-examination of state's witnesses was to implant the element of consent.

The gravamen of defendant's appeal is directed at the admission of opinion testimony of Dr. Ebrahim Amanat, a psychiatrist specializing in the diagnosis and treatment of rape victims. Specifically, defendant contends that there was no proper foundation for the testimony, that his opinion was based on hearsay statements related to him by the victim, that his opinion was a wrongful incursion into jury province and that his opinion was irrelevant and immaterial. Efforts to suppress the expression of Dr. Amanat's opinion through motion and objection were unavailing.

We can accept Dr. Amanat's expert qualification on the subject of his testimony. He has 15 years experience as a psychiatrist and has treated over 300 victims of rape and sexual assault. He has authored an article and contributed to a book dealing with rape trauma syndrome.

According to Dr. Amanat, rape trauma syndrome is generally recognized and accepted in the psychiatric community as a syndrome with identifiable symptoms which develop in nearly 95 percent of all victims of rape and sexual assault. He also stated that other serious traumas, such as exposure to combat, fire, earthquake or other catastrophic experiences produce similar traits.

Dr. Amanat's examination of the prosecutrix took place about three months after the assault upon her. It was from her verbal and nonverbal responses to his questions during the examination that he reached his conclusion that she suffered from rape trauma syndrome brought on by the rape incident she described to him.

During the examination, the victim exhibited symptoms of extreme carefulness, muscle tension, irritability, psychomotor retardation, panic reaction, intense agitation, inability to react, long pauses and blocking of thoughts, problems in communicating her feelings, fear of dying, fear of damage to her body, fear of nervous breakdown, tendency toward emotional withdrawal, feelings

of guilt, helplessness, disbelief, physical fatigue, sleep problems, and a reliving of the experience. All of the symptoms, according to Dr. Amanat, are consistent with rape trauma syndrome. In fact, she displayed 40 of the 50 recognized manifestations of the syndrome. He testified that the victim was not fantasizing when she described the rape, that she would not be capable of feigning the symptoms and that he could visualize no reason by which consensual intercourse would cause such symptoms.

According to Dr. Amanat, rape trauma syndrome is one of many specific syndromes included in the general classification of post-traumatic stress disorder caused by serious life traumas. The content of the response to the trauma varies with the type. Thus, the symptoms of a person suffering from post-traumatic stress disorder caused by combat would not be entirely the same as those of a person suffering from post-traumatic stress disorder induced by rape. Rape produces a specific and unique pattern of responses because it is a combination of physical and sexual assault.

Dr. Amanat testified that he approached the victim's disorder as rape trauma syndrome because she told him she had been raped and because her nonverbal responses during the examination verified this information. Further, he testified that he normally considers a patient's psychological makeup and history in arriving at his diagnosis and that, to the best of his knowledge, there was nothing in the victim's history outside the alleged rape that would have caused the intensity of her response. He also stated that the diagnosis of rape trauma syndrome using the techniques he applied is 80 percent reliable.

Literature covering the treatment of the psychiatric consequences of rape supports Dr. Amanat's testimony that rape trauma syndrome is generally accepted as a common reaction to sexual assault. *See* McCombie, *The Rape Crisis Intervention Handbook* 724–26 (1980); Kaplan, Freedman and Sadock, *Comprehensive Textbook of Psychiatry* §§ 21.1d, 24.15 (3d ed. 1980); C. Warner, *Rape and Sexual Assault* 145–49

(1980); Burgess and Holmstrom, *Rape: Crisis and Recovery* 35–47 (1979).

A number of other jurisdictions have dealt with the subject matter of rape trauma syndrome, permitting psychiatrists and others to explain in trial under varying circumstances the symptoms and express the professional opinion that rape could be the cause of a victim's condition. *See Redmond v. Baxley,* 475 F.Supp. 1111 (E.D. Mich.1979) (civil action); *People v. Mathews,* 91 Cal.App.3d 1018, 1021, 154 Cal.Rptr. 628 (1979) (defense to criminal charge); *Division of Corrections v. Wynn,* 438 So.2d 446 (Fla.App.1983); *Alphonso v. Charity Hospital of Louisiana at New Orleans,* 413 So.2d 982 (La.App.1982); *Terrio v. McDonough,* 16 Mass.App. 163, 450 N.E.2d 190 (1983) (civil action); *State v. Mackie,* 622 P.2d 673, 675 (Mont.1981) (defines "rape trauma syndrome"); *White v. Violent Crimes Compensation Board,* 76 N.J. 368, 388 A.2d 206 (1978) (civil action); *State v. Jackson,* 97 N.M. 467, 641 P.2d 498 (1982) (results of examination ordered by defendant may be used by prosecution); *State v. Middleton,* 294 Or. 427, 657 P.2d 1215 (1983) (allows expert testimony on rape trauma syndrome but specifically rejects allowing expert comment on truthfulness of victim); *State v. LeBrun,* 37 Or.App. 411, 587 P.2d 1044 (1978) (evidence allowed over objection that expert was not qualified); *In the Matter of Pittsburg Action Against Rape,* 494 Pa. 15, 428 A.2d 126 (1981).

The ultimate issue facing us here is whether evidence that the victim of an alleged rape suffers from rape trauma syndrome is admissible as evidence that intercourse was not consensual. This presents a new issue for Missouri courts' consideration. In *State v. Walker,* 639 S.W.2d 854 (Mo. App.1982), evidence of rape trauma syndrome was allowed, but its admissibility was never challenged; hence, that case does not offer perfect guidance.

Minnesota and Kansas have dealt with the precise issue confronting this Court, with each state reaching a different result and, therefore, providing an interesting comparison.

*State v. Saldana,* 324 N.W.2d 227 (Minn. 1982), holds that an expert's opinion that an alleged rape victim suffered from rape trauma syndrome is inadmissible on the issue of consent. In *Saldana,* a counselor for sexual assault victims testified that she had met the alleged victim 10 days after the alleged rape and had counseled her for a 10-week period. The counselor stated her opinion that the victim suffered from rape trauma syndrome and that the victim had been sexually assaulted and raped. Further, she related that the victim could not have fantasized the rape. *Id.* at 229–30.

The Minnesota Supreme Court held that the primary criterion in determining the admissibility of expert testimony is whether the testimony helps the jury to reach its decision. If not, it must be excluded. The testimony regarding the existence of rape trauma syndrome was found infirm in two respects: first, that it did not assist the jury in its fact-finding function; and, second, that its probative value was substantially outweighed by the danger that it unfairly prejudiced, confused or misled the jury.

The usefulness of a psychiatric evaluation as a method of proving rape was rejected by the following reasoning:

> Rape trauma syndrome is not the type of scientific test that accurately and reliably determines whether a rape has occurred. The characteristic symptoms may follow *any* psychologically traumatic event. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 236 (3d ed. 1980). At best, the syndrome describes only symptoms that occur with some frequency, but makes no pretense of describing every single case. C. Warner, *Rape and Sexual Assault* 145 (1980) . . . .
>
> . . . .
>
> The scientific evaluation of rape trauma syndrome has not reached a level of reliability that surpasses the quality of common sense evaluation present in jury deliberations.

*Id.,* 324 N.W.2d at 229–30.

*Saldana* concludes that "[r]ape trauma syndrome is not a fact-finding tool, but a therapeutic tool useful in counseling." *Id.* at 230. The case also expresses concern that the portion of the expert's testimony offering the opinion that the victim was raped was of no real benefit to the jury, but was unfairly prejudicial by giving " 'a stamp of scientific legitimacy to the truth of the complaining witness's factual testimony.' " *Id.* at 231, *quoting People v. Izzo,* 90 Mich.App. 727, 730, 282 N.W.2d 10, 11 (1979).

*State v. McGee,* 324 N.W.2d 232 (Minn. 1982), decided simultaneously with *Saldana,* steadfastly follows its companion case.

A result contrary to *Saldana* and *McGee* is reached in Kansas. In *State v. Marks,* 231 Kan. 645, 647 P.2d 1292 (1982), the Kansas Supreme Court treats the same issue. In *Marks,* a psychiatrist testified that he examined the alleged victim two weeks after the attack. Based on his evaluation, he testified the alleged victim had, indeed, been the target of "a frightening assault, an attack" and that she was suffering from the post-traumatic stress disorder known as rape trauma syndrome. *Id.* at 1299.

Basis for the decision was found in the Kansas rule on expert testimony, Kan.Stat. Ann. 60–456(b) and (d) (1976), which provides that an expert may testify about his opinion if it is based on facts personally known to him or made known to him at trial and if it is within the scope of his expertise. Such testimony is not objectionable, as it embraces the ultimate issue to be decided by the trier of fact. *Id.* at 1299. *Marks* finds that if the presence of rape trauma syndrome is detectable and reliable as evidence that a forcible assault did take place, it is relevant when the defense is consent. After examination of the relevant literature, the Kansas Supreme Court determined rape trauma syndrome is generally accepted to be a common reaction to sexual assault and held that qualified expert psychiatric testimony concerning rape trauma syndrome is relevant and admissible on the issue of consent. *Id.* Kansas has, therefore, given judicial approbation to

rape trauma syndrome in a situation similar to that under consideration here.

*People v. Bledsoe,* 140 Cal.App.3d 267, 189 Cal.Rptr. 726 (1983) represents California's pertinent venture in the rape trauma syndrome testimony arena. *Bledsoe* holds that expert testimony given in much the same manner as in this case "is relevant on whether the forcible rape, in fact, occurred." *Id.* at 729. But the majority opinion in *Bledsoe* nevertheless recognizes that such abstract expert opinion "may create a substantial danger of undue prejudice, confuse issues, or mislead the jury." *Id.* at 730.

■ The rule in Missouri is that expert opinion testimony "should never be admitted unless it is clear that the jurors themselves are not capable, for want of experience or knowledge of the subject, to draw correct conclusions from the facts proved." *Sampson v. Missouri Pacific Railroad Co.,* 560 S.W.2d 573, 586 (Mo. banc 1978), *quoting Housman v. Fiddyment,* 421 S.W.2d 284, 289 (Mo. banc 1967). The evidence must aid the jury. *Garrett v. Joseph Schlitz Brewing Co.,* 631 S.W.2d 652, 654 (Mo.App.1982). And admission of scientific evidence depends on wide acceptance in the relevant scientific community of its reliability. *State v. White,* 621 S.W.2d 287, 293 (Mo. 1981); *State v. Stout,* 478 S.W.2d 368, 369 (Mo.1972); *State v. Williams,* 659 S.W.2d 309, 310 (Mo.App.1983); *Imms v. Clarke,* 654 S.W.2d 281, 284 (Mo.App.1983); *State v. Sager,* 600 S.W.2d 541, 573 (Mo.App.1980), *cert. denied,* 450 U.S. 910, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981).

■ Certainly, evidence should be excluded if it unnecessarily diverts the attention of the jury from the question to be decided. *State v. Robinson,* 588 S.W.2d 247, 248 (Mo.App.1979). But it is within the trial court's sound discretion whether to admit an expert's testimony. *State v. White,* 621 S.W.2d at 292.

■ In Missouri, an expert may testify as to his opinion on an ultimate issue in a criminal case. *State v. Paglino,* 319 S.W.2d 613 (Mo.1958), states:

Every opinion of an expert witness is to an "ultimate" fact in the sense that it is a conclusion based upon facts supported by the evidence. We may assume that it would not be proper for an expert witness to express his opinion on the ultimate issue of whether appellant was guilty of the offense charged, but that was not done here, and as this court recognized in the *Eickmann* case, opinions of experts are often admissible upon vital issues which only the trier of fact may decide.

*Id.* at 624.

But *Paglino* also says that "an opinion (evidence) cannot 'invade the *province* of a jury,' and this [is true], even though the opinion is upon the very issue to be decided." *Id.* at 623, *quoting Eickmann v. St. Louis Public Service Co.,* 363 Mo. 651, 253 S.W.2d 122, 129 (1952); *see also State v. White,* 621 S.W.2d at 293. *Compare State v. Smith,* 422 S.W.2d 50, 63 (Mo. banc 1967), *cert. denied,* 393 U.S. 895, 89 S.Ct. 150, 21 L.Ed.2d 176 (1968).

■ It is nearly bromidic that a physician may give his opinion that a rape victim's wounds were caused by forcible sexual intercourse. *See State v. Berry,* 609 S.W.2d 948, 954 (Mo. banc 1980) (evidence of victim's physical condition after rape is pertinent to issue of force); *State v. Laney,* 506 S.W.2d 452 (Mo.1974); *State v. Chandler,* 314 S.W.2d 897, 901 (Mo.1958); *State v. Mitchell,* 339 Mo. 228, 96 S.W.2d 341, 343 (1936) (physical evidence of violence or consequences of rape readily apparent); *State v. Foster,* 490 S.W.2d 662, 665 (Mo.App. 1973) (mother testifies to victim's physical condition).

■ However, expert opinion testimony is not admissible as it relates to credibility of witnesses. *Beishir v. State,* 522 S.W.2d 761, 765 (Mo. banc 1975), *cert. denied,* 423 U.S. 946, 96 S.Ct. 361, 46 L.Ed.2d 280 (1975).

Having examined the above precepts and the testimony, we hold that Dr. Amanat's conclusion that the prosecutrix suffered rape trauma syndrome as a result of the

rape incident she described goes beyond proper limits of opinion expression.

■ It may not be gainsaid that the existence of psychological symptoms in a complainant which correspond to a traumatic stress reaction is probative of the issue of force, in the sense that it renders that fact more probable than it would have been without the evidence. McCormick, Evidence § 185, at 437 (2d ed. 1972). However, in determining the admissibility of evidence, its probative value must not be outweighed by its tendency to create undue prejudice in the minds of the jury. *Id.* at 439. When analyzing the opinion of an expert witness under this test, the question of probativeness is more accurately expressed in terms of the soundness of the scientific basis on which it rests, rather than its tendency, if taken as true, to prove the fact in issue. *See* Comment, *The Psychologist as Expert Witness: Science in the Courtroom?,* 38 Md.Law Rev. 539, 541 (1979).[2] This is the same query as to whether a principle has "gained general acceptance in the particular field to which it belongs." *State v. Stout,* 478 S.W.2d at 371; McCormick, *supra,* § 203, at 489; *see also State v. Williams,* 659 S.W.2d at 310.

■ Viewed in this light, it is apparent that Dr. Amanat's statements that the prosecutrix suffered from rape trauma syndrome and that she had been raped are not sufficiently based on a scientific technique, which is either parochially accepted or rationally sound, to overcome the inherent danger of prejudice created by his status as an expert.

There are inherent implications from the use of the term "rape trauma syndrome", for it suggests that the syndrome may only be caused by "rape" as the court in *Saldana, supra,* emphasized.

In the case *sub judice,* Dr. Amanat was permitted to state that the prosecutrix suffered from rape trauma syndrome and further comment, albeit implicitly, that she

was in fact raped at Mary's Moonlight Lounge. His testimony therefore fully supports that the attack occurred as the victim related. Defendant repeatedly challenged the introduction of this testimony, charging that it would not be probative of the fact of rape and that it would be unduly prejudicial. At trial, defendant rephrased the latter objection by stating that the testimony presupposed the existence of a rape. These objections, especially when taken together, go to the very heart of the reason for excluding testimony that the complainant actually suffers from rape trauma syndrome and that she was in fact raped.

Properly qualified, an expert in the psychological testing field may testify that the patient, client or victim does possess and exhibit the characteristics consistent with those resulting from a traumatic stress reaction, such as rape. Or the expert may relate that the characteristics have been caused by some traumatic experience other than rape. But there would be no relevancy of that limited testimony in this proceeding.

Under the circumstances of this case, Dr. Amanat went too far in expressing his opinion that the victim suffered rape trauma syndrome as a consequence of the incident with the defendant at Mary's Moonlight Lounge. That conclusion vouches too much for the victim's credibility and supplies verisimilitude for her on the critical issue of whether defendant did rape her. That was not part of Dr. Amanat's evaluation process. For, indeed, according to Dr. Amanat, trauma syndrome could result from a number of stressful situations, and it would be too presumptious for him to designate the particular experience. That was not his proper function.

A reading of Dr. Amanat's testimony reveals that the state's purpose in using it was to buttress the victim's credibility. The doctor testified that his diagnosis was based on his belief of what the victim had told him. He evaluated her veracity by

**2.** Freedman, Kaplan and Sadock, *Comprehensive Textbook of Psychiatry* 1517–25 (3d ed. 1980) and American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 236–38 (3d ed. 1980) provide further information on post-traumatic stress disorders.

observing her verbal and nonverbal conduct during the examination. At trial, he stated his opinion of the reliability of the victim's testimony when he stated that she had not fantasized the rape. Clearly, a psychiatrist's testimony that a victim's mental wounds were caused by forcible intercourse also tends to corroborate a victim's testimony that she was raped.

What does the testimony regarding rape trauma syndrome prove in this instance: whether the victim had been raped at some time or that she had experienced some stressful sexual experience which may or may not have occurred at Mary's Moonlight Lounge? There is no evidence that Dr. Amanat was qualified to relate the specific incident that caused the victim's symptoms. Thus, the only purpose would be to bolster her testimony by unrelated scientific evidence.

Clearly, the psychiatrist's specific statement that the victim did not fantasize the rape was an express opinion about her credibility, and his entire testimony that the victim suffered from rape trauma syndrome carried with it an implied opinion that the victim had told the truth in describing the rape. Further, the psychiatrist's testimony that he was specifically trained to evaluate verbal and nonverbal responses lends a special reliability to his opinion of the victim's credibility. As the court in *Saldana* stated, "[o]nce a witness is deemed competent, expert opinions concerning the witness's reliability in distinguishing truth from fantasy are generally inadmissible because such opinions invade the jury's province to make credibility determinations." *Saldana,* 324 N.W.2d at 231. The jury was competent to determine the victim's credibility; therefore, Dr. Amanat's testimony designed to invest scientific cachet on the critical issue was erroneously admitted. Otherwise, trials could degenerate to a battle of experts expressing opinion on the substance of witness' veracity. *See Beishir v. State,* 522 S.W.2d at 765.

In this instance, the peril of prejudice and confusion resulting from the opinion testimony substantially outweighs any probative value that it might have. This is so despite the great and constant growth in scientific progress.

According to the state's expert, the prosecutrix suffered an emotional and stressful sexual experience. But the somewhat inscrutable procedures utilized by the psychiatrist do not provide proper foundation for him to state that a rape occurred at Mary's Moonlight Lounge to cause the prosecutrix' emotional turmoil. The history of the exceptionally fine jury system in this state instructs us not to tamper with the jurors' decision process in such manner. Rape trauma syndrome should not be utilized as the instrument to establish the guilt or innocence of one accused of rape. As applied here, its use was inimical to the proper jury operation. In spite of the phenomenal and constant accomplishments of science, it does not seem fusty or anachronistic to preserve the integrity of that operation in a confrontation with scientific opinion.

Under the qualifications given, the most that Dr. Amanat could legitimately state would be that the prosecutrix' symptoms were consistent with a traumatic experience—even a stressful sexual experience. But it goes beyond his qualifications to say that she was raped by defendant at Mary's Moonlight Lounge. That is indeed a chasm too wide and deep to leap.

The only issue in this case was whether the intercourse was forcible or consensual. The state did not need to prove that the victim suffered from rape trauma syndrome in order to sustain its burden of proof on that issue. The jury could determine whether the intercourse was forcible based on its own evaluation of the physical evidence and testimony and credibility of the witnesses. There is a risk that the jury will regard the expert's opinion that a victim suffers from rape trauma syndrome resulting from a forcible assault as dispositive on the issue of consent. The term itself connotes rape. And a hazard exists from "the misleading aura of certainty" that surrounds scientific evidence. *State v. Stout,* 478 S.W.2d at 372; *Saldana,* 324 N.W.2d at 230. There is also danger that the expert

testimony will divert the jury's attention from the real issue and cause confusion with numerous collateral issues.

The cause must be reversed and remanded for a new trial.

Other issues raised on appeal are not likely to occur on retrial and need not be discussed.

Reversed and remanded for retrial.

All concur.