487 A.2d 664

**William Alfred ALLEWALT**

v.

**STATE of Maryland.**

**No. 381, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Feb. 7, 1985.

504

Bradford G.Y. Carney, Baltimore (Valerie J. Lithotomos and Callahan, Calwell & Laudeman, Baltimore, on brief), for appellant.

Alan H. Murrell, Public Defender and George E. Burns, Jr., Asst. Public Defender, Baltimore, for amicus curiae.

Diane G. Goldsmith, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, Sandra A. O'Connor, State's Atty. for Baltimore County and Jonathan Scott Smith, Asst. State's Atty., Towson, for Baltimore County, on brief), for appellee.

Argued before ADKINS and ROSALYN B. BELL, JJ., and JAMES C. MORTON, Jr., Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

ROSALYN B. BELL, Judge.

This appeal presents the issue of whether evidence that a victim suffered from post-traumatic stress disorder is admissible to prove lack of consent in a rape case.

The victim testified that on June 24, 1983, she watched television in her bedroom from about 7:30 p.m. to 11:00 p.m., when she fell asleep. She shared the house with her two daughters,[1] and her older daughter's boyfriend, William Alfred Allewalt. The upper floors of the house were used by the victim and one daughter, while her other daughter lived in the basement rooms with Allewalt.

At about 2:00 a.m., Allewalt's knocking on her bedroom door and the barking of her two poodles awakened the victim. When she opened the door, Allewalt asked when her daughter (his girlfriend) would return home and inquired why no one had cared for her daughter's dog. The victim related at trial that she told him her daughter would be back the next day, whereupon Allewalt forced the door open and grabbed her wrists. She warned him not to do "what [he was] thinking about doing." Allewalt repeatedly said it was all right and complied with the victim's request that he release her. She then went into the bathroom adjoining her bedroom and drank a glass of water, but did not attempt to escape.[2]

When the victim returned to the room, a second struggle ensued and this time she fell, hitting her back against the bedroom door. She further explained that Allewalt picked her up and carried her down the hall to her younger daughter's bedroom. He threw her onto the bed, removed her underwear, and told her to remove the robe she was

---

**1.** Both daughters were visiting the victim's sister on the night of the incident.

**2.** Although the victim also claimed the bathroom door had no lock and that no combs, nail files or razors were kept in there, both her daughter and Allewalt testified to the contrary.

wearing. Although Allewalt proceeded to have intercourse with the victim, he again released her when she asked him to do so. The victim returned to her bedroom, smoked a cigarette and then went to her neighbors' home to telephone police.[3]

Additional questioning of the victim revealed that she had been diagnosed as depressed prior to the occurrence on June 24. She had sought treatment with a counselor because she had been losing a great deal of weight and was crying frequently. The victim also had separated from her husband in March 1983, and her older daughter was pregnant for the second time by Allewalt.

Allewalt did not deny that he had intercourse with the victim, but his testimony presented quite a different scenario. He related that he had gone out drinking with a friend and arrived home about 3:00 a.m. in the morning of June 25.[4] Allewalt admitted knocking on the victim's bedroom door, but said he did so because he had found her daughter's dog without food or water and it appeared to have been neglected all day. Allewalt explained that the victim then seduced him and led him to the bedroom down the hall. He further stated that, when the victim seemed to change her mind during intercourse and pushed him away, Allewalt left and went to his own bedroom, where he fell asleep. Hence, he introduced as his defense the consent of the victim.

In rebuttal, the State questioned Dr. Spodak, an expert in forensic psychiatry. The court excused the jury and listened to the proposed evidence concerning post-traumatic stress disorder (PTSD). The witness indicated that the disorder has been recognized for "literally decades," although it has had different names, such as "shell shock"

---

**3.** The neighbors and the police officers who spoke with the victim soon after the incident all testified that she was very distraught and nearly hysterical.

**4.** Allewalt claims to have consumed 15 to 20 beers that night.

and "transient situational disturbance." Dr. Spodak further explained that the generally accepted technique used to identify the condition is the same as for any mental disorder. This includes observing the person's appearance, speech, mood, and intellect. The witness also stated that no literature or authority indicated that the method of making the diagnosis was unreliable. No mention was made, however, of the reliability of the technique to establish that a particular trauma occurred.

After this preliminary testimony, the court decided to admit the evidence and allow the jury to consider it. In this portion of the proceeding, Dr. Spodak stated that he had examined the victim three and one-half months after the rape and found her to be suffering from PTSD. Although the victim had suffered similar symptoms prior to the rape, Dr. Spodak opined that the characteristics of post-traumatic stress disorder were sufficiently distinct from those associated with the depression experienced by the victim previously. He further noted that her marital and domestic problems did not provide the kind of sudden trauma that causes the disorder. Upon cross-examination, Dr. Spodak explained that a diagnosis of PTSD required him to presume that the trauma (here, the rape) actually occurred stating:

"I think it is more important that the individual reporting, that is the patient or person you are evaluating, believes that it took place. But ... the whole diagnosis is predicated on the assumption that some traumatic incident occurred."

In effect, the patient's assertion that the particular event occurred becomes more significant than which type of traumatic incident in fact happened.

The jury found appellant guilty of second degree rape, fourth degree sexual offense, and common law assault. Based on these findings, the Circuit Court for Baltimore County imposed concurrent sentences of: (1) Ten years imprisonment, with five years suspended, for the rape conviction, and (2) Eighteen months imprisonment for each of the other two counts.

In challenging the jury's findings and the accompanying prison sentences, appellant raises several issues for this court to review. We will address only the claim that:

"I. [t]he trial court erred in admitting expert psychiatric testimony indicating that the victim suffered from post-traumatic stress disorder caused by rape.

Such evidence should have been excluded because:

A. It invades the jury's province to decide the existence or lack of consent.

B. The theory is not generally accepted in the scientific community for evidentiary purposes, but rather serves as a subjective diagnosis to determine the appropriate therapy for a patient.

C. The jury decides the credibility of witnesses (here, the victim), not an examining psychiatrist.

D. The evidence is more prejudicial than probative and, therefore, does not constitute harmless error."

The State claims that appellee has not preserved many of these assertions of error for appeal by failing to object at the relevant times. Md. Rule 1085. We disagree. Appellant entered objections to the use of post-traumatic stress disorder evidence on two bases: (1) The method was not generally accepted by the scientific community, and (2) The jury did not need help of this kind to determine the issue of consent. Appellant's presentation of issues for review appears simply to elaborate on these objections, rather than to include additional questions which the trial court did not consider.

Because of our disposition of appellant's first issue, we need not and will not discuss the other points raised. We must review the relevant background materials in some depth, however, since the appellate courts of this State have not previously considered the use of post-traumatic stress disorder as evidence of lack of consent to a rape.

## POST-TRAUMATIC STRESS DISORDER

Post-traumatic stress disorder (PTSD) has been described as "the development of symptoms following a psychologi-

cally traumatic event not generally encountered in human experience." Smith, *Post Traumatic Stress Disorder*, 20 Trial 92 (February 1984); American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 236 (3d ed. 1980). The disorder may occur in persons who have experienced combat, natural disasters, car or airplane accidents, or rape.[5] Smith, *supra;* APA, *supra.* Characteristic symptoms include recurring nightmares of the event, headaches, sleep disturbance, and diminished responsiveness to the external world. This reaction may become apparent shortly after the traumatic experience, or it may not arise until several months or years later. APA, *supra* at 237. When the victim ultimately seeks counselling or psychiatric help, he or she may relate that a certain event occurred, after which the symptoms appeared. Hence, a diagnosis of PTSD may be made at this point.

Much of the literature on the subject discusses PTSD in the context of treating the victim of a traumatic occurrence. *See, e.g.*, Woodling and Kossoris, *Sexual Misuse: Rape, Molestation, and Incest*, 28 Ped.Clin.N.Am. 481, 488–90 (1981); Burgess and Holmstrom, Rape: Victims of Crisis, 47–50 (1974); Burgess and Holmstrom, *Rape Trauma Syndrome*, 131 Am.J.Psychiatry 981 (September 1974). In effect, a determination that the patient suffers from PTSD serves as a preliminary therapeutic tool. The counsellor or psychiatrist may begin appropriate treatment once the symptoms have been identified.

Several jurisdictions have considered the admissibility of expert testimony concerning PTSD. The courts appear to agree on its use in civil cases, but no apparent consensus exists regarding criminal cases.

---

**5.** When the traumatic event causing PTSD is rape, some experts use the term "rape trauma syndrome" and consider this a subcategory of PTSD. Burgess and Holmstrom, Rape: Crisis and Recovery (1979); Woodling and Kossoris, *Sexual Misuse: Rape, Molestation, and Incest*, 28 Ped.Clin.N.Am. 481 (1981).

In civil actions arising out of a rape, courts have admitted PTSD evidence with little difficulty. In those instances, the expert witness does not purport to offer proof that the rape occurred. Rather, the testimony assists in establishing damages. Several courts have admitted information on PTSD to aid in evaluating compensable injuries suffered by a plaintiff. *See, e.g., Terrio v. McDonough,* 16 Mass.App. 163, 450 N.E.2d 190 (1983) (suit for injuries caused by falling down a staircase when leaving scene of alleged rape; expert testimony concerning PTSD introduced to show that victim's return to alleged assailant's apartment to retrieve her purse did not necessarily contradict her claim that a rape occurred); *Division of Corrections v. Wynn,* 438 So.2d 446, 448 (Fla.1983) (evidence of rape trauma syndrome admissible and relevant to show "the nature of the trauma suffered by a rape victim, and factors that may aid or retard recovery."); *Alphonso v. Charity Hospital of Louisiana,* 413 So.2d 982, 986 (La.1982) (PTSD as basis for recovery; "[p]ost traumatic stress disorder injuries (formerly called traumatic neurosis) [are] recognized as deserving compensation when proven to exist.").

In criminal cases, courts have not accepted this expert testimony as readily as in civil actions. The reasoning for admitting or excluding PTSD evidence, however, seems to fall into distinct categories.

Some courts have admitted evidence of PTSD to aid the jury in determining the issue of consent. *See, e.g., State v. Liddell,* 685 P.2d 918 (Mont.1984); *State v. Marks,* 231 Kan. 645, 647 P.2d 1292 (1982). Rather than confusing or misleading the jury, these courts consider it to be like any other evidence. The jury must assess the expert's credibility and decide the weight to place on his testimony. Because the expert also is cross-examined as any other witness, the danger of prejudice does not exceed that accompanying any other proof offered by the State. *Liddell,* 685 P.2d at 923; *Marks,* 647 P.2d at 1299. The *Marks* court applied the

*Frye* [6] test and concluded that rape trauma syndrome met the standard because it represents a generally accepted reaction to sexual assault. 647 P.2d at 1299.

Other courts have refused to allow expert testimony on PTSD in a rape trial because the prejudicial effect of such evidence outweighs its probative value. *See, e.g., State v. Taylor,* 663 S.W.2d 235 (Mo.1984); *State v. McGee,* 324 N.W.2d 232 (Minn.1982); *State v. Saldana,* 324 N.W.2d 227 (Minn.1982). Not only does the discussion confuse and mislead the jury, but "[r]ape trauma syndrome is not the type of scientific test that accurately and reliably determines whether a rape has occurred [because] [t]he characteristic symptoms may follow *any* psychologically traumatic event." *Saldana,* 324 N.W.2d at 229 (emphasis in original). *See also, Taylor,* 663 S.W.2d at 240. Furthermore, these courts opine, a determination that the victim suffers from rape trauma syndrome does not help the jury to perform its function; the diagnosis serves as a tool for counselling and therapy, while the jury acts as a finder of fact. *Saldana,* 324 N.W.2d at 230. Moreover, the testimony hinders the jury because it "vouches too much for the victim's credibility." *Taylor,* 663 S.W.2d at 240.[7] Hence, PTSD evidence is excluded because it is unduly prejudicial and invades the province of the jury. *Saldana,* 324 N.W.2d at 230–31.

The Supreme Court of California combined factors of each position when it discussed the admissibility of testimony involving PTSD in two cases. *People v. Bledsoe,* 36 Cal.3d 236, 681 P.2d 291, 203 Cal.Rptr. 450 (1984); *People v.*

---

**6.** *Frye v. United States,* 293 F. 1013 (1923). In *Frye,* the Court of Appeals of the District of Columbia held that expert testimony derived from a scientific principle is admissible only if the technique is generally accepted in the applicable field.

**7.** The court said that the expert could not opine that the victim suffered rape trauma syndrome as a result of rape. Although an expert could testify concerning a victim's characteristics that resembled those associated with the syndrome, the court noted that such limited testimony would not be relevant to the proceeding. *Taylor,* 663 S.W.2d at 240.

*Stanley,* 36 Cal.3d 253, 681 P.2d 302, 203 Cal.Rptr. 461 (1984). The court found the evidence inadmissible in *Bledsoe, supra,* because it did not meet the *Frye* standard. The conviction was affirmed, however, in light of the lack of prejudice due to the strength of the other evidence. *Bledsoe, supra.* In *People v. Stanley, supra,* the appellant's failure to preserve the issue of admissibility under the *Frye* test precluded appellate review. The court noted in dicta that even if PTSD were inadmissible the case was strong enough that it would have been harmless error. *Id.*

## EXPERT TESTIMONY

A prerequisite to the admission of any evidence is that it be both relevant and material—it must tend to prove or disprove an issue that affects the outcome of the case. *Kennedy v. Crouch,* 191 Md. 580, 585, 62 A.2d 582, 585 (1948). When the proffered information supports "a proposition that [has] no legal significance to the litigation," the court may exclude it. *Paige v. Manuzak,* 57 Md.App. 621, 632, 471 A.2d 758, 763 (1984). Even relevant and material evidence, however, becomes inadmissible when the prejudicial effect of the proffered testimony outweighs its probative value. *Dorsey v. State,* 276 Md. 638, 350 A.2d 665 (1976); *Blondes v. Hayes,* 29 Md.App. 663, 350 A.2d 163 (1976).

The admission of expert testimony lies within the discretion of the trial court. The general standard used is whether such evidence will be helpful to the jury in addition to meeting the requirements of relevance and materiality. Thus, expert witnesses most often discuss "matters so removed from the ordinary pursuits of life that accurate knowledge of them can be acquired only by continued study and experience...." *Wilson v. State,* 181 Md. 1, 6, 26 A.2d 770, 773 (1942). *See also, Radman v. Harold,* 279 Md. 167, 367 A.2d 472 (1977); *Winkles v. State,* 40 Md.App. 616, 392 A.2d 1173 (1978).

In order to qualify as an expert, a witness must "[exhibit] such a degree of knowledge as to make it appear that his opinion is of some value whether such knowledge has been gained from observation or experience, standard books, maps of recognized authority, or any other reliable sources." *Radman v. Harold*, 279 Md. at 170, 367 A.2d at 474, quoting *Casualty Insurance Co. v. Messenger*, 181 Md. 295, 298–99, 29 A.2d 653, 655 (1943). *See also, Wilson v. State, supra; Winkles v. State, supra.* These initial criteria indicate whether a witness has the requisite "special knowledge" to testify as an expert. *Radman, supra; Wilson, supra; Winkles, supra.* Once qualified, an expert may discuss his personal observations or may respond to a hypothetical question. *See, e.g., Terry v. State*, 34 Md.App. 99, 366 A.2d 65 (1976), *cert. denied*, 279 Md. 685 (1977) (medical examiner testified concerning victim's manner of death based on testimony heard at trial and medical records); *Allen v. State*, 234 Md. 366, 199 A.2d 237 (1964) (expert witness responded to hypothetical question concerning sanity of defendant).

In the present case, Dr. Spodak fulfilled the necessary qualifications to testify as an expert concerning PTSD. Evidence of the disorder is relevant and material insofar as any information tending to support an inference of consent or lack of consent affects the ultimate determination of whether a rape occurred. Despite the satisfaction of these requirements, PTSD testimony remains inadmissible because of the prejudicial impact it has on a rape case. We will explain.

A diagnosis of PTSD does not reliably prove that a victim did not consent to sexual intercourse, but only indicates that the victim displays certain symptoms. *See,* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders, supra;* Burgess and Holmstrom, *Rape Trauma Syndrome, supra;* Burgess and Holmstrom, *Rape: Victims of Crisis, supra.* In fact, a physician simply assumes that the victim related an incident

that actually happened or, at least, her perception of what took place.[8] Dr. Spodak admitted this lack of probative value in the following colloquy:

"THE COURT: [O]ur problem in this Court is not to determine whether [the victim] had a post traumatic stress disorder but whether she was raped. Can you say with a degree of medical certainty that she was raped . . .?

"[DR. SPODAK]: My concern is that, [the rape issue] is a kind of factual issue that I wasn't trying to deal with. I can say with reasonable medical certainty that she has post traumatic stress disorder.

\* \* \* \* \* \*

"And that it is brought on by rape as one of the traumas.

"THE COURT: To the exclusion of any other trauma?

"[DR. SPODAK]: I am not aware of any other traumas that she had that could account for these symptoms other than a rape."

The detection of PTSD in a victim does not make the underlying assumption reliable, especially in this case, where the victim suffered similar symptoms prior to the alleged rape.[9] While evidence of PTSD may be relevant to prove the victim's resulting injury, it does not establish that rape was the trauma causing it.[10] As a result, the diagnosis

---

**8.** Doctors often testify concerning information given them by a patient during an examination. This exception to the hearsay rule is based on the inference that a person seeking medical care will tell the truth. A similar situation arises when a patient seeks help and is diagnosed as having PTSD. The tale related by the victim suffering from PTSD, however, becomes less reliable because "it is more important that the individual . . . *believes* that it took place." The accuracy of this belief does not receive consideration.

**9.** Dr. Spodak opined that the characteristics of PTSD were sufficiently distinct from those associated with the victim's prior depression. He noted, however, that a sudden, unexpected marital separation could be a sufficient emotional trauma to cause the symptoms.

**10.** Our exclusion of expert testimony regarding PTSD in criminal cases does not mean that it may not be relevant and material in a civil

has little probative value in a rape case in which the ultimate issue is the occurrence of rape, i.e., whether a rape caused the disorder.

Furthermore, expert testimony regarding PTSD unduly corroborates the victim's rendition of the incident. By stating that a rape *could* cause the disorder, an expert implicitly verifies the victim's claim that rape *did* cause it. This leads to confusion as to the issue being decided and creates the perception that no further factfinding is necessary. *See, State v. Taylor, supra; State v. Saldana, supra; State v. McGee, supra.*

We, therefore, hold that the limited probative value of PTSD testimony is outweighed by the prejudicial effect it has on the outcome of the case. The State introduced the information solely to rebut the proffered defense of consent. As we discussed above, the evidence proves only the result of a trauma, and does not conclusively establish the type of trauma. Hence, the introduction of PTSD into evidence constitutes reversible error. *Blondes v. Hayes, supra.*

In light of our decision, we do not reach the question of whether the *Frye* test applies to PTSD evidence.[11] We reverse and remand this case for a new trial consistent with this opinion.

**JUDGMENT REVERSED AND CASE REMANDED FOR A NEW TRIAL CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY BALTIMORE COUNTY.**

---

action for damages. A court could find that such evidence is probative of damages, but we do not decide that issue at this juncture.

**11.** The Court of Appeals adopted the *Frye* test for admitting expert testimony concerning scientific evidence in *Reed v. State,* 283 Md. 374, 391 A.2d 364 (1978).