STATE of Missouri, Respondent,

v.

Bryan SEDDENS, Appellant.

Bryan SEDDENS, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 60654, 63759.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 21, 1994.

---

1. Mr. Kluge did not file a respondent's brief on appeal.

Loyce Hamilton, S. Paige Canfield, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Michael J. Spillane, Asst. Atty. Gen., Jefferson City, for respondent.

CARL R. GAERTNER, Judge.

Defendant, Bryan Seddens, was convicted of first degree murder in violation of § 565.-020 RSMo 1986. He filed a *pro se* Rule 29.15 motion to vacate judgment which was amended after counsel was appointed to represent him. The motion court denied relief without an evidentiary hearing. In this consolidated action defendant appeals both the judgment of conviction and the denial of post-conviction relief. We remand this action to the trial court for further proceedings and affirm the order of the motion court.

On May 7, 1990, the defendant and his friend, Jerome Wilhite, and Wilhite's uncle, Larry Wilhite, drove to a liquor store and then to a White Castle's restaurant to buy food. At the restaurant Larry Wilhite noticed that the defendant was carrying a twenty-five caliber pistol. After leaving the restaurant, the three drove past the corner of Lee and Newstead Avenues in the City of St. Louis.

Charles Little, Sherri Deal, Katrina Watts and Reginald Smith were all standing on the corner when the car drove past. As the car approached, Katrina Watts waved. The defendant, who was seated on the passenger side, raised his arm in a hand gesture. Watts testified that the gesture was a symbol of the Bloods street gang. After the car passed the group, it turned around on Lee and drove back toward the corner. The defendant leaned out of the passenger window. Charles Little noticed the raised arm holding an object so he shouted, "Driveby." Little knocked Sherri Deal to the ground as several shots were fired. A bullet struck Little in the back of his upper right leg. Beatrice Mixon, a passenger in a car preparing to turn right at Lee and Newstead, was struck in the head by a bullet and killed.

After all the evidence was presented, the jury returned a verdict of guilty of first degree murder. This appeal followed.

## I

In his first point on appeal, the defendant argues that the trial court erred by refusing to submit his proffered instruction on involuntary manslaughter. We need not determine whether the court erred in this instance because any error would necessarily be harmless.

The court instructed the jury on murder, first degree and murder, second degree. The jury found the defendant guilty of first degree murder and rejected the option of finding the defendant guilty of the lesser offense of second degree murder. Therefore, there is no reasonable basis to infer the jury would have exercised greater leniency and reduced the conviction to manslaughter. *State v. Smith*, 781 S.W.2d 761, 766 (Mo. banc 1989); *State v. Shaw*, 839 S.W.2d 30, 37 (Mo.App.1992). As such, the court's refusal to instruct the jury on manslaughter could not have prejudiced the defendant. *Shaw* at 37. The defendant's first point is denied.

## II

In his second point, the defendant argues that the trial court erred in allowing the assistant circuit attorney to examine the jury with the use of hypothetical questions on

accomplice liability during voir dire. Using two different hypothetical situations, the prosecutor questioned the veniremen about their ability to follow the law on accomplice liability. Both times the defendant objected, and both times the court allowed the prosecutor to continue. The defendant maintains that the prosecutor's questions led to an erroneous definition of accessorial liability.

■ Voir dire is intended to provide both parties the opportunity to participate in the selection of a fair and impartial jury. *State v. Hudson,* 815 S.W.2d 430, 432 (Mo. App.1991). The nature and extent of counsel's questioning in this process is within the discretion of the trial court. *Hudson* at 432. When the court exercises its discretion during voir dire, its decisions will not be disturbed absent manifest abuse of that discretion and a real probability of injury to the defendant. *Id.* It is not necessarily an abuse of discretion to allow the prosecutor to use hypothetical situations to probe veniremen on their ability to follow the law. *See State v. Roberts,* 709 S.W.2d 857, 864–65 (Mo. banc 1986).

The jury was instructed on accessorial liability with a modified version of MAI–CR3d 304.04. The instruction provided:

> A person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if he acts with him with the common purpose of committing that offense, or if, for the purpose of committing that offense, he aids or encourages the other person in committing it.

The prosecutor's hypotheticals did not diverge from this instruction. The court did not abuse its discretion in overruling defendant's objections. Defendant's second point is denied.

### III

■ In his third point on appeal, the defendant complains that the court erred in allowing the expert testimony of police officer Terry James regarding "gangs" and "gang want-to-bes." First, the defendant argues that James was not qualified to testify as an expert. Additionally, the defendant maintains that the testimony was irrelevant and was elicited only to inflame the jury.

■ The test of an expert's qualification is whether the expert has knowledge from education or experience which will aid the trier of fact. *State v. Mallett,* 732 S.W.2d 527, 537 (Mo. banc 1987). The qualification of an expert is a matter resting primarily in the sound discretion of the trial court. *Mallett* at 537. We find no abuse of that discretion.

■ The defendant's argument seems to be levelled at James' lack of formal training on gang related activity. The defendant points out that James' time at professional seminars relating to gang activity amounts to only fourteen days. This alleged limitation in James' formal training went to the weight of his testimony, not its admissibility. *State v. Conley,* 698 S.W.2d 542, 544 (Mo.App. 1984). Furthermore, defendant's argument ignores James' practical experience. James' current responsibility as a police officer is investigating the criminal activities of gangs. In the course of such investigations, he testified that he has interviewed approximately sixty gang members. A witness may be qualified to testify as an expert although his knowledge may have been gained by practical experience rather than by scientific study or formal training. *State v. Garrett,* 682 S.W.2d 153, 155 (Mo.App.1984). The trial court did not abuse its discretion in determining that James was qualified to testify as an expert on gang related activity.

■ We also conclude that James' testimony was not irrelevant and was not used to inflame the jury. Expert testimony should be admitted only if it is clear that the jurors themselves are not capable, for want of experience or knowledge of the subject, to draw correct conclusions from the facts proved. *State v. Taylor,* 663 S.W.2d 235, 239 (Mo. banc 1984). The testimony must aid the jury. *Id.* The testimony should be excluded if it unnecessarily diverts the attention of the jury from the question to be decided. *Id.* Ultimately it is within the trial court's discretion whether to admit an expert's testimony. *Id.*

James testified about the practices, symbols, terminology and history of street gangs. Most of his testimony dealt with two rival gangs, the Crips and the Bloods. James stated that a great deal of antagonism exists between the Crips and Bloods. Some of this rivalry is over geographical areas. Both gangs mark their "turf" with graffiti. Crips are associated with the colors blue and black; Bloods are associated with red. Using a picture, James identified graffiti of both the Crips and the Bloods on the building which fronted the scene of the shooting.

James' testimony was used to aid the jury in understanding the implications of many of the facts in evidence. When Wilhite and defendant first drove past the scene, defendant flashed a Bloods sign. Both Wilhite and the defendant were wearing red articles of clothing. Both Charles Little and Reginald Smith, who were standing on the corner where the shooting took place, were wearing blue. Together with these facts, the expert testimony was relevant in explaining the State's theory that the motive for the shooting was gang rivalry and that Little and Smith were the intended targets, not the victim. Defendant's third point is denied.

## IV

■ In the defendant's fourth point on direct appeal, he alleges that the trial court erred when it denied his *Batson*[1] challenge without considering or requiring the State to provide reasons for its use of two peremptory strikes against black venirepersons. After both parties made their strikes, the trial court asked if either party had any objections. Defense counsel challenged two of the State's strikes against. black venirepersons. The court denied defendant's motion without requiring any explanations from the State because the court noted that the percentage of black individuals on the venire panel was approximately the same as the percentage on the jury. In fact, the State only used two of its six strikes on black venirepersons.

The trial court's ruling violates the mandate of the Missouri Supreme Court in *State v. Parker*, 836 S.W.2d 930 (Mo. banc 1992).

In *Parker* the court outlined the procedural process for a *Batson* challenge.

(1) The defendant must raise a *Batson* challenge with regard to one or more specific venirepersons struck by the State and identify the cognizable racial group to which the venireperson or persons belong.

(2) The trial court will then require the State to come forward with reasonably specific and clear race-neutral explanations for the strike.

(3) Assuming the prosecutor is able to articulate an acceptable reason for the strikes, the defendant will then need to show that the State's proffered reasons for the strikes were merely pretextual and that the strikes were racially motivated.

*Parker* at 939. In the present instance, defense counsel specified two stricken venirepersons, identified them as black women, and suggested that the strikes were racially motivated. The trial court did not, however, require any explanation from the State.

In response the State points out the trial court's actions were supported by authority at that time. *See State v. Hunter*, 802 S.W.2d 201, 204 (Mo.App.1991). Authority did exist which supported the procedure used by the trial court. However, there are a number of examples of cases such as this one, where the case was tried prior to the *Parker* decision but the *Parker* procedure was subsequently applied to that case. *See, e.g., State v. Aziz*, 844 S.W.2d 531 (Mo.App. 1992).

■ The State also contends that defendant did not preserve his *Batson* objection because, in his motion for new trial, the defendant did not request the proper relief. The defendant, instead, asked for a mistrial. But where the defense attorney clearly intends to assert a *Batson* challenge and the court fully understands the defendant's objection, the form of the motion is not fatal to appellate review. *State v. Starks*, 834 S.W.2d 197, 198 fn. 1 (Mo. banc 1992). Therefore, we must remand this case to the trial court for an evidentiary hearing on this issue. The court will follow the procedure and factors outlined in *Parker* and certify to

1. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

this court a record of its proceeding and finding.

## V

Defendant's final point on direct appeal challenges the reasonable doubt instruction submitted to the jury and based on MAI–CR3d 302.04. The Missouri Supreme Court has already ruled on this issue and has determined that this instruction is constitutional. *State v. Griffin*, 848 S.W.2d 464, 469 (Mo. banc 1993). Point denied.

## VI

■ Defendant also appeals from the denial of his Rule 29.15 motion. Defendant's sole complaint on appeal from his Rule 29.15 motion is that the motion court failed to issue findings of fact and conclusions of law regarding many of the allegations included in the defendant's motion. The allegations which the court failed to address were all contained in defendant's *pro se* motion which was incorporated in his amended Rule 29.15 motion.

■ A number of these allegations state trial errors. Not one of these trial errors was argued on direct appeal. The defendant gives no indication why these issues were not argued on direct appeal nor what exceptional circumstances would render these claims the proper subject of a post-conviction motion. Defendant's claims of trial error are not cognizable in a Rule 29.15 motion. *State v. Six*, 805 S.W.2d 159, 173 (Mo. banc 1991); *Rainwater v. State*, 770 S.W.2d 368, 370–71 (Mo. App.1989). It is not error to fail to issue findings of fact and conclusions of law addressed at claims which are not properly raised in a post-conviction motion. *Balow v. State*, 796 S.W.2d 643, 646 (Mo.App.1990).

■ Defendant's other allegations are either refuted by the record, conclusory or without merit. Therefore, defendant was not prejudiced by the motion court's failure to address these points with findings of fact and conclusions of law. *See State v. Jennings*, 815 S.W.2d 434, 449 (Mo.App.1991). Point denied.

This cause is remanded to the trial court for a hearing consistent with the holding of this opinion..

GRIMM, P.J., and AHRENS, J., concur.