**UNITED STATES, Appellee,**

v.

**Private E2 Matthew W. TOMLINSON, 457–29–6018, United States Army, Appellant.**

**CM 445673.**

U.S. Army Court of Military Review.

26 July 1985.

---

Captain Thomas J. Feeney, JAGC, argued the cause for appellant. With him on the brief were Colonel William G. Eckhardt, JAGC, Lieutenant Colonel Arthur L. Hunt, JAGC, and James W. Bradford, Jr., Esquire.

Captain Michael S. Child, JAGC, argued the cause for appellee. With him on the brief were Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Lieutenant Colonel Joseph A. Rehyansky, JAGC, Captain Karen A. Charbonneau, JAGC, and Captain John J. Park, Jr., JAGC.

Before SUTER, YAWN, and WALCZAK, Appellate Military Judges.

## OPINION OF THE COURT

YAWN, Senior Judge:

Contrary to his pleas, the appellant was convicted by a general court-martial composed of officers and enlisted members of rape and violation of a lawful general regulation by possessing a switchblade knife in violation of Articles 120 and 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 892 (1982). He was sentenced to a dishonorable discharge, confinement at hard labor for 15 years, total forfeitures, and reduction to Private E–1. The convening authority reduced the period of confinement to 10 years but otherwise approved the sentence adjudged.

The appellant contends that his conviction of rape cannot stand because the military judge admitted, over defense objec-

tion, expert testimony that the victim, Air Force Staff Sergeant (SSG) H, was suffering from a post-traumatic stress disorder that was consistent with "rape trauma syndrome." We agree.

The crucial issue at trial was whether SSG H had consented to the sexual intercourse. The appellant and SSG H met at an Air Force base in Germany during the evening hours; they played video games and discussed computers. Staff Sergeant H mentioned that she owned a computer and had it in her dormitory room. At about 2330 hours, SSG H decided to return to her dormitory room and invited the appellant to come along to see her computer. She did not consider this to be a late hour for inviting someone to her room since she would ordinarily be awake at this time. Staff Sergeant H said she usually worked the "graveyard shift" from 2330 to 0730 hours but was off work on the evening at issue. Once in SSG H's room, the appellant and SSG H played video games on the computer, ate a pizza, listened to records, and talked. At about 0545 hours the next morning, SSG H stated she told the appellant that she had to go to sleep and asked him to leave. She testified that, rather than leaving, the appellant put a switchblade knife to her throat and raped her.

After relating the details of the alleged rape, SSG H testified about her reactions following the incident: she felt nauseous, could not eat or sleep, and felt extreme changes of mood. She indicated that these reactions had not fully subsided by the time of the trial.

During the cross-examination of SSG H, the defense brought out certain inconsistencies in statements SSG H made to Army criminal investigation agents on the day of the alleged rape and again nearly one month later. On the latter occasion, SSG H was questioned by three agents; apparently, two of the agents would question her at one time. The defense also elicited from SSG H that she had been raised to believe premarital sex was bad, specifically that sex was "dirty and wrong," and she had not told her parents about the incident be-

cause she did not know how they would handle it.

In his defense the appellant admitted that he had sexual intercourse with SSG H but claimed that it was consensual. The defense's theory of the case was that, although SSG H had consented to intercourse, she subsequently accused the appellant of rape because of guilt feelings produced by her strict upbringing.

Over defense's objection, the military judge allowed the government to call as a rebuttal witness Captain (CPT) James Butler, a clinical social worker who had been counseling SSG H. Captain Butler said he had previously treated about thirty people suffering from post-traumatic stress disorder and indicated that the stress disorder suffered by approximately half of these individuals was attributable to rape. Captain Butler testified that SSG H came to him with "complaints of poor sleep and poor appetite, following a sexual assault." Captain Butler then discussed "rape trauma syndrome," a type of post-trauma stress disorder, describing two phases of the rape trauma syndrome and the associated symptoms. He then described SSG H's symptoms. He stated that, in addition to poor sleep and lack of appetite, SSG H exhibited feelings of anger at the rapist and at herself for setting herself up. Captain Butler further testified that SSG H exhibited fear of being alone with men in uniform, primarily Army uniforms, and that SSG H had nightmares about the incident. After describing a particular set of symptoms, CPT Butler would opine that they were consistent with rape trauma syndrome.

Upon cross-examination by the defense, CPT Butler admitted that SSG H's symptoms were consistent with things other than rape trauma syndrome. After making this admission, CPT Butler asked the military judge if he could make an additional statement. The military judge granted CPT Butler's request. Captain Butler stated that SSG H's symptoms considered as a whole led to the conclusion of rape trauma. The defense then asked CPT Butler if inter-

course for the first time could be a traumatic event for someone with a background similar to SSG H's. Captain Butler stated it could be. On redirect, CPT Butler reiterated that SSG H was suffering from a post-traumatic stress disorder which was consistent with rape trauma syndrome.

After counsel completed their questioning, the military judge then asked CPT Butler whether a person, with the symptoms exhibited by SSG H, would tend to panic if interrogated by a team of males and do anything to "get out of the situation." Captain Butler responded in the affirmative and later stated such a situation would be anxiety-producing for SSG H. Pursuant to a question submitted by a court member, the military judge asked CPT Butler if a person could fake rape trauma syndrome while seeing a professional as many times as SSG H had seen him. Captain Butler responded it would not be easy.

The appellant contends that the military judge abused his discretion by admitting CPT Butler's testimony, over defense's objection, since the testimony lacked probative value and posed a substantial danger of misleading the court members. Given the facts of this case, we find the substance of CPT Butler's testimony, as it related to the issue of whether SSG H had consented to sexual intercourse with the appellant, gave rise to a danger of unfair prejudice which clearly outweighed the probative value of the testimony. Mil.R.Evid. 403. Accordingly, the military judge erred by admitting CPT Butler's testimony. Moreover, since a fair risk exists that appellant was prejudiced by the admission of CPT Butler's testimony, appellant's conviction cannot stand.

■ In reaching the determination that CPT Butler's testimony should be excluded, we presume that CPT Butler was qualified to testify as an expert witness. Mil.R.Evid. 702. *See also United States v. Snipes*, 18 M.J. 172, 178 (C.M.A.1984) (Military Rules of Evidence were intended to broaden the admissibility of expert testimo-

ny). Mindful that Mil.R.Evid. 401 establishes a low threshold of relevance,[1] we also presume that CPT Butler's testimony was relevant. The existence of psychological or physiological symptoms in a witness which correspond to a traumatic stress reaction is probative of the issue that the witness suffered a traumatic experience. *See e.g., State v. Taylor*, 663 S.W.2d 235, 240 (Mo.1984) (en banc); *People v. Bledsoe*, 36 Cal.3d 236, 203 Cal.Rptr. 450, 457, 681 P.2d 291, 298 (1984); *State v. Marks*, 231 Kan. 645, 647 P.2d 1292, 1299 (1982). In this case, CPT Butler's testimony that SSG H's complaints were consistent with rape trauma syndrome tends to indicate that SSG H did not consent to intercourse with the appellant. Of course, not all relevant evidence is admissible. Under Mil.R.Evid. 403, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. While Mil.R.Evid. 403 gives the military judge wide discretion to determine the propriety of admitting evidence, a determination under this rule is subject to review for an abuse of discretion. *See United States v. Mukes*, 18 M.J. 358, 359 (C.M.A.1984); *United States v. Wright*, 20 M.J. 518, 521 (A.C.M.R.1985); *United States v. Williams*, 17 M.J. 548, 549–50 (A.C.M.R.1983), *pet. denied*, 18 M.J. 432 (C.M.A.1984). As in this case, when the danger of unfair prejudice clearly outweighs the probative value of the evidence, admission of the evidence constitutes error. *See Llaguno v. Mingey*, 763 F.2d 1560, 1569 (7th Cir.1985) (en banc).

■ The case at bar turned on a question of credibility. Staff Sergeant H claimed that she had been raped by the appellant. The appellant admitted he had sexual intercourse with SSG H but claimed she consented. The court members had to determine who was telling the truth.

The government ostensibly introduced CPT Butler's testimony to rebut the defense's claim that the intercourse was consensual. It is important to note that the government did not proffer CPT Butler's

---

1. S. Saltzburg, L. Schinasi, & D. Schleuter, Military Rules of Evidence Manual 325 (1981).

testimony to rebut any specific defense attack on SSG H's testimony. Indeed, when defense counsel objected to CPT Butler being called as a witness, the trial counsel stated that CPT Butler was being called merely to testify that SSG H's behavior after the alleged rape was consistent with rape trauma syndrome. In essence, the government sought to prove that, because SSG H suffered from rape trauma syndrome, she had in fact been raped. The probative value of CPT Butler's testimony as support for this proposition was clearly outweighed by the danger of unfair prejudice.

Captain Butler's testimony was introduced simply to bolster SSG H's credibility and reinforce her testimony concerning the events at issue. Captain Butler's consistent reiteration that SSG H's symptoms were consistent with rape trauma syndrome and his assertions that SSG H came to him following a sexual assault, that she exhibited anger at the rapist, and that it was unlikely SSG H faked the symptoms of rape trauma, constituted an implied opinion that SSG H had spoken the truth when she testified that appellant had raped her. In addition, CPT Butler's assertions that SSG H came to him "following a sexual assault" and that she exhibited anger at the "rapist" provided explicit support for SSG H's credibility. Since the record does not indicate that CPT Butler had any personal knowledge concerning the alleged rape or that he attempted to acquire such knowledge, these assertions were necessarily based on recitations SSG H made to CPT Butler and were no more than affirmations by CPT Butler that he believed the accuracy of SSG H's representations. Even CPT Butler's consistent use of and emphasis on the phrase "rape trauma syndrome" suggested that the syndrome could only have been caused by rape. *See State v. Taylor,* 663 S.W.2d at 240.

The court members in this case were fully competent to determine whether SSG H was credible; consequently, the probative value of CPT Butler's testimony was not great. The danger of unfair prejudice created by such testimony is obvious since the admission of CPT Butler's testimony gave "a stamp of scientific legitimacy" to the truth of SSG H's factual testimony. *State v. Saldana,* 324 N.W.2d 227, 231 (Minn.1982) (citation omitted). *Cf. United States v. Moore,* 15 M.J. 354, 375 (C.M.A. 1983) (Everett, C.J., dissenting) (special reliability of expert's testimony may create substantial danger of undue prejudice); *People v. Bledsoe,* 203 Cal.Rptr. at 460, 681 P.2d at 301 (testimony of expert that victim exhibited symptoms of rape trauma syndrome unfairly prejudices an appellant by creating aura of special reliability and trustworthiness). Moreover, CPT Butler's testimony gave rise to a clear danger that the court members would consider his testimony dispositive on the issue of consent. *See State v. Taylor,* 663 S.W.2d at 241 (expert opinion that victim suffers from rape trauma syndrome creates risk that jury will consider opinion, with its misleading aura of certainty, dispositive on issue of consent). Captain Butler's assumption that SSG H's complaints arose from a sexual assault and the designation of SSG H's symptoms as rape trauma syndrome necessarily imply the legal conclusion that SSG H was the victim of a rape. While we believe CPT Butler could have properly testified that SSG H's symptoms were consistent with a traumatic experience or even a stressful sexual experience, his testimony was not so limited. Indeed, construed in its entirety, CPT Butler's testimony appeared to be an opinion that a rape, in the legal sense, had in fact occurred. Such testimony goes too far and unfairly prejudiced the appellant.

■ By saying that CPT Butler's testimony unfairly prejudiced the appellant, we do not just mean that the testimony was highly damaging. "[E]vidence is 'unfairly prejudicial' when it is apt to be used for something other than its logical, probative force, e.g., when court members might dramatically overestimate its value, be confused as to its meaning, or emotionally react to it." *United States v. Williams,* 17 M.J. at 550 (citations omitted). In this case, CPT Butler's testimony that SSG H

suffered from rape trauma syndrome created a substantial risk that the court members would be overawed by CPT Butler's testimony and abdicate their responsibility for determining the credibility of SSG H's testimony. *Cf. United States v. Snipes*, 18 M.J. at 180 (Everett, C.J., concurring in the result) ("[H]earing a purported expert give his opinion about the credibility of a witness may hinder the factfinder by distracting him from using his own experience and common sense...."). Both the government and the accused are entitled to have issues of fact and credibility decided by court members. To allow an "expert" to offer his opinion on the resolution of a credibility dispute goes too far, and it makes no difference whether the opinion is express or follows inferentially from the expert's diagnosis of a psychological condition suffered by the witness whose credibility is at issue. The court members must decide whether a witness is telling the truth. Expert insights into human nature are permissible, but lie detector evidence—whether human or mechanical—is not. Otherwise, trials could degenerate into a battle of experts expressing opinions on the veracity of various witnesses. *See State v. Taylor*, 663 S.W.2d at 241.

We do not suggest that all testimony concerning the effects of emotional trauma are inadmissible. For example, testimony that emotional trauma may cause lapses or inconsistencies in recollection would have been proper rebuttal evidence to show that the inconsistencies in SSG H's statements to the investigators could have been caused by the trauma rather than untruthfulness. As the Supreme Court of California has recognized, such testimony "may play a ... useful role by disabusing the [court] of some widely held misconceptions about ... victims, so that it may evaluate the evidence free of the constraints of popular myths." *People v. Bledsoe*, 203 Cal.Rptr. at 457, 681 P.2d at 298 (citations omitted). Testimony of this type is relevant and may not be unduly prejudicial provided the testimony is couched in general terms and is not offered as a professional evaluation of the truthfulness of a witness. *Cf. People*

*v. Roscoe*, 168 Cal.App.3d 1093, 215 Cal. Rptr. 45, 37 Crim.L.Rep. (BNA) 2259 (5th Dist., 1985) (introduction of expert testimony for purposes of rehabilitating witness's credibility should be limited to a discussion of victims as a class and should not extend to a discussion and diagnosis of particular witnesses).

Caution is required, however, whenever the expert's testimony approaches an opinion that in a given case a rape has in fact occurred. An expert's qualification to suggest a witness was raped because she suffers from rape trauma syndrome is at best questionable. *See State v. Taylor*, 663 S.W.2d at 240. As several state courts have noted, the concept of rape trauma syndrome was "not devised to determine the 'truth' or 'accuracy' of a particular past event—i.e., whether, in fact, a rape in the legal sense occurred—but rather was developed by professional rape counselors as a therapeutic tool, to help identify, predict and treat emotional problems experienced by the counselors' clients." *People v. Bledsoe*, 36 Cal.3d 236, 203 Cal.Rptr. 450, 459, 681 P.2d 291, 300 (Cal.1984); *see State v. Saldana*, 324 N.W.2d 227, 230 (Minn. 1982); *see also State v. Taylor*, 663 S.W. 235 (Mo.1984) (en banc) (fact that victim exhibited symptoms of rape trauma syndrome does not qualify expert to designate experience that gave rise to trauma). Additionally, while certain symptoms have been identified as indicative of rape trauma syndrome, *see e.g.*, Burgess & Holmstrom, *Rape Trauma Syndrome*, 131 Am.J.Psychia. 981 (1974), the same symptoms could result from other stressful situations. *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 236–38 (3d ed. 1980).

Several elements comprise the legal definition of rape. Art. 120, UCMJ, 10 U.S.C. § 920 (1982). Under this legal definition, a female can honestly believe she has been raped, when, as a matter of law, she has not. *Id.* For example, if the female does not consent to sexual intercourse but fails to make her lack of consent reasonably manifest, no rape has occurred.

Manual for Courts-Martial [MCM], United States, 1969 (Revised edition), para. 199a (current version at MCM, United States, 1984, part IV, para. 45a). Given the purpose and nature of the rape trauma syndrome concept, an expert's ability to make these important legal distinctions is suspect. *See e.g., People v. Bledsoe,* 681 P.2d at 300–01, 203 Cal.Rptr. 459–60. Such determinations are best left to the triers of fact.

In reaching our decision in this case, we emphasize that the government did not introduce CPT Butler's testimony for the limited purpose of showing that inconsistencies in SSG H's statements were the product of emotional trauma. After counsel completed their examination of CPT Butler, the military judge did explore this area when he asked CPT Butler whether a person with SSG H's symptoms would tend to panic if interrogated by a team of males and do anything to get out of the situation. The discussion on this issue was brief and no instruction was given limiting the court members' consideration of CPT Butler's testimony to this particular inquiry. The gist of CPT Butler's testimony, as presented and considered by the court members, was simply impermissible bolstering of SSG H's credibility.

█ The final question for our determination is whether the erroneous admission of CPT Butler's testimony entitles the appellant to any relief. The sole issue in this case was whether the sexual intercourse was consensual. The court members' resolution of this issue depended mainly upon whether they believed SSG H or the appellant. Given the evidence in this case, CPT Butler's testimony may have tipped the balance.

The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

Chief Judge SUTER and Judge WALCZAK concur.