**UNITED STATES, Appellee,**

v.

**Private First Class Timothy J. KRUEMPELMAN, 407–90–2890, United States Army, Appellant.**

**SPCM 21467.**

U.S. Army Court of Military Review.

31 Dec. 1985.

For Appellant: Lieutenant Colonel Paul J. Luedtke, JAGC, Captain Eric T. Franzen, JAGC, Captain Annamary Sullivan, JAGC (on brief).

For Appellee: Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Major Byron J. Braun, JAGC, First Lieutenant Amaury R. Colon, JAGC (on brief).

Before COMEAU, WATKINS, and LYMBURNER, Appellate Military Judges.

### OPINION OF THE COURT

COMEAU, Senior Judge:

Contrary to his pleas, appellant was convicted by military judge sitting as a special court-martial of possession of cocaine and unauthorized absence. He was sentenced to a bad-conduct discharge, confinement for 39 days, forfeiture of $400 pay per month for two months, and reduction to the lowest enlisted grade. The convening authority approved the sentence.

Appellant asserts, personally and through counsel, that the military judge erred by admitting into evidence statements of the appellant which were tainted by a previous unwarned interrogation. Ap-

pellant also asserts that the sentence he received is unduly harsh.

An unannounced health and welfare inspection of appellant's barracks was held early on the morning of 13 November 1984. The inspection was conducted by noncommissioned officers working in teams of two. During the inspection, appellant and other occupants of the barracks were kept in the barracks' dayroom until they were summoned to accompany the inspectors to their rooms, open their rooms for the inspectors, and remain present during the inspection of the room.

Staff Sergeant Finch inspected the room shared by appellant and two other soldiers. In the top drawer of a nightstand adjacent to the head of appellant's bed, Sergeant Finch found a vial containing a white powder and thought it might be contraband. Sergeant Finch asked appellant, without any warning of his rights, if the vial was his and what it contained. Appellant responded that it was his, but that it was just caffeine he had bought downtown. Sergeant Finch gave the vial to the First Sergeant, who took it to the Company Commander, Captain Carter, reporting also that appellant had admitted ownership of the vial. Captain Carter read appellant his rights pursuant to Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831 (1982) [UCMJ], and questioned appellant without advising him that his prior unwarned statement to Sergeant Finch could not be used against him. Appellant again admitted ownership of the vial. Shortly thereafter appellant was apprehended by military police investigator [MPI] Kowalski, who also advised appellant of his Article 31, UCMJ, rights and questioned him. Appellant again asserted that the white powder was caffeine. MPI Kowalski was aware of and admitted relying upon appellant's earlier, unwarned statement to Sergeant Finch but did not advise him that the unwarned statement could not be used

against him. All three interrogations occurred within a two hour period, during which appellant was in the custody of military authorities. At trial, the military judge suppressed appellant's statement to Sergeant Finch, but determined that the subsequent statements to Captain Carter and MPI Kowalski were admissible.

The Supreme Court has recently held that the initial failure to administer *Miranda*[1] rights warnings, standing alone, does not render inadmissible subsequent voluntary statements rendered after proper advisement. *Oregon v. Elstad,* —— U.S. ——, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985).

■ In *United States v. Ravenel,* 20 M.J. 842 (A.C.M.R.1985), this Court examined the impact of *Oregon v. Elstad,* —— U.S. ——, 105 S.Ct. 1285, 84 L.Ed.2d 222, on cases involving initial statements obtained in violation of Article 31, UCMJ.[2] Noting that "[t]he only difference between the objectives of Article 31(b) and *Miranda* is that Article 31(b) is also designed to insulate a service member from the subtle pressure created by rank or duty to respond to an incriminating question," *United States v. Ravenel,* 20 M.J. at 845, *citing United States v. Jones,* 19 M.J. 961, 967 (A.C.M.R.1985), this Court found that a noncommissioned officer's statements obtained in violation of Article 31, UCMJ during a noncustodial witness interview by Criminal Investigation Command agents did not taint subsequent statements so as to render them inadmissible. In *Ravenel* the appellant had intervened in a domestic disturbance and had gone voluntarily to the military police station directly from the scene of the disturbance. This Court found that Ravenel's initial statement was freely and voluntarily given and that there existed no circumstances calculated to undermine appellant's ability to exercise his free will with respect to either his initial, un-

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. We agree with the military judge's determination that Sergeant Finch, suspecting that the

substance in the vial found in appellant's nightstand was contraband, should have advised appellant of his Article 31, UCMJ rights before questioning him. *See United States v. Morris,* 13 M.J. 297 (C.M.A.1982).

warned statement or to his subsequent statements.

■ The circumstances of the instant case, however, compel a different conclusion. In this case, appellant, a Private First Class, was placed by his military superiors in a tightly controlled situation and was made to stand by and witness a non-commissioned officer in his chain-of-command inspect his barrack's room and personal possessions for the presence of contraband. We find that the atmosphere of the mandatory inspection in this case was far more coercive than the circumstances surrounding the accused's initial unwarned statement in *Ravenel*, 20 M.J. at 847. The "subtle pressures" of military society which do not exist in civilian society, *United States v. Remai*, 19 M.J. 229, 233 (C.M.A. 1985) were, in appellant's case, fully operative and remove this case from the ambit of the holdings of *Oregon v. Elstad* and *Ravenel*.

■ Our determination that appellant's Article 31, UCMJ, rights were violated and his initial statement was obtained in an inherently coercive atmosphere raises the presumption that his subsequent statements to CPT Carter and MPI Kowalski were influenced, and thereby tainted, by the initial, inadmissible statement. *See United States v. Seay*, 1 M.J. 201 (C.M.A. 1975); *United States v. Hundley*, 45 CMR 94 (C.M.A.1972). Applying the factors to be weighed in resolving whether the presumptive taint of the former interrogation has been overcome, *see United States v. Seay*, 1 M.J. at 204, we find that the government failed to overcome the presumption of influence and that admission of appellant's statements to CPT Carter and MPI Kowalski was prejudicial error.

Even if we were to test for harmless error beyond a reasonable doubt, *see United States v. Remai*, 19 M.J. at 233, we would reach the same result. Appellant was also charged with possession of marijuana residue (Specification 2 of Charge I) in a pipe discovered in a drawer under his bed during the same inspection. His defense at trial was that several people had access to appellant's room and to the drawers in which the contraband was found and that someone else could have left the drugs in the drawers without appellant's knowledge. Neither drawer was secured at the time of the inspection. According to one of appellant's roommates, the nightstand drawer, although it could be locked, was not usually secured, and the room was likewise often not locked. Appellant was partially successful in his defense and was acquitted of the specification alleging possession of marijuana. The only substantive difference between the charges of possession of the marijuana and possession of the cocaine is that appellant admitted ownership of the vial containing cocaine but denied ownership of the pipe containing the marijuana residue. Considering these facts, we cannot say that the admission of appellant's statements to CPT Carter and to MPI Kowalski was harmless beyond reasonable doubt.

The disposition we reach with respect to this issue renders consideration of the sentence appropriateness issue unnecessary at this time.

The findings of guilty of Specification 1 of Charge I and of Charge I are set aside. The remaining findings of guilty are affirmed. The sentence is set aside subject to the condition hereafter stated. The same or a different convening authority may order a rehearing on Specification 1 of Charge I and Charge I and the sentence, which is conditionally set aside for the purpose of rehearing. If the convening authority determines that a rehearing on Specification 1 of Charge I and Charge I is impracticable, he will dismiss them and order a rehearing on the sentence only. If the convening authority determines that a rehearing on the sentence likewise is impracticable, he may reassess the sentence.

Judge WATKINS and Judge LYMBURNER concur.