**UNITED STATES, Appellee,**

v.

**Specialist Four Marvin D. CARTER, 254–11–8932, United States Army, Appellant.**

**CM 447485.**

U.S. Army Court of Military Review.

20 June 1986.

For Appellant: Lieutenant Colonel Paul J. Luedtke, JAGC, Captain Wendell A. Hollis, JAGC, Captain Deborah B. de Palo, JAGC (on brief).

For Appellee: Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Major Byron J. Braun, JAGC, Captain Susan E. Fine, JAGC (on brief).

Before MARDEN, PAULEY and De GIULIO, Appellate Military Judges.

---

1. The disobedience charge consisted of a violation of a lawful general order prohibiting appellant from entering a room designated for only female occupants. As a practical matter, it was not defended against and has no relevance to the matters at issue.

## OPINION OF THE COURT

MARDEN, Senior Judge:

Appellant was convicted, contrary to his pleas, by a court composed of officer members of the offenses of rape and violating a lawful general order[1] in violation of Articles 120 and 92, Uniform Code of Military Justice [hereinafter cited as UCMJ], 10 U.S.C. §§ 920 and 892. He was sentenced to a bad-conduct discharge, confinement at hard labor for two years, forfeiture of $300.00 pay per month for six months, and reduction to the lowest enlisted grade. The convening authority approved the sentence.

Appellant contends under Military Rule of Evidence (MRE) 403 that the military judge erred by admitting, over defense objection, testimony in rebuttal by Captain Allison Thompson,[2] a psychiatrist, concerning "rape trauma syndrome" as to whether it "effectively related to the issue of whether Specialist Four ... [D] had consented to sexual intercourse with appellant and hence gave rise to a danger of unfair prejudice to appellant which clearly outweighed the probative value of the testimony, confusion of the issues, and misleading the finder of fact." We disagree and affirm.

### I

On the evening in question the victim, Specialist D, and appellant were in the victim's room. They were engaged in normal conversation and talked about music. After a period of time, Specialist D became tired and asked appellant to leave. Whereupon, appellant shut and locked the door and had sexual intercourse with Specialist D. Specialist D alleged she was raped by appellant. In addition to the victim's testimony, the prosecution presented the testimony of Special Agent Charles Woodall

---

2. Captain Thompson, a member of the Army Medical Corps, is the same individual referred to in this opinion as Doctor Thompson.

who had interviewed appellant on several different occasions. Two interviews resulted in written statements, the first of which was a denial of the charges; and, the second statement alleged Specialist D was a prostitute. Another interview resulted in inculpatory statements which were not reduced to writing. At trial, appellant admitted to having been untruthful in his sworn written statements.

The defense theory of the case was that Specialist D consented to the intercourse and afterwards accused appellant of rape because of a subsequent argument. In addition to the appellant's testimony, the defense called a witness who indicated she heard no one yell from inside Specialist D's room during the time of the incident, and four witnesses who testified that appellant was a peaceful and truthful person.

In rebuttal, the government called two witnesses to testify as to Specialist D's truthfulness. Also in rebuttal, Dr. Thompson testified regarding a psychological disorder of Specialist D, to wit: rape trauma syndrome. Trial counsel offered this testimony for the purpose of showing that the presence of the symptoms of this condition was inconsistent with consent. Defense counsel objected and articulated that objection as follows:

> As far as Captain Thompson is concerned, the defense feels that the prosecution has already had a chance to present its witnesses on consent. It's already been denied by the prosecution. It's already—and then countered by the defense.

The objection was overruled without argument.

Doctor Thompson was offered by the government as an expert on rape trauma syndrome, defined as a type of post-traumatic stress disorder (PTSD), and as an expert on the treatment of rape victims. The defense made no objection and the military judge recognized her as such an expert. She testified concerning her clinical observations of Specialist D, including her diagnosis of PTSD, manifested and more particularly described as rape trauma syndrome. She discussed the hallmark symptoms of rape trauma syndrome, comparing these with Specialist D's symptoms and stated that she believed there was very little chance of her having being tricked into such a diagnosis by the victim. The psychiatrist did not testify that Specialist D had been raped by appellant or that she had been raped at all. Her testimony avoided such judgments. She indicated Specialist D had been referred to her due to "suspected distress because of an *alleged* rape" (emphasis added). Any questions bearing on Specialist D's credibility were posed by defense counsel during cross-examination.

We note that the military judge, in instructing the court regarding expert testimony, stated as follows:

> You have heard the testimony of Dr. Thompson concerning rape trauma syndrome. Captain Thompson did not tell you that Specialist ... [D] was raped. What Dr. Thompson told you was that she had symptoms that are similar or consistent with rape trauma syndrome. The question of whether or not Specialist ... [D] was raped is the question you have to decide.

## II

The term "rape trauma syndrome" was first used in 1974 in an article describing the recurring pattern of emotional distress in rape victims. Burgess & Holmstrom, *Rape Trauma Syndrome*, 131 Am.J. of Psychiatry 981 (1984). More specifically, rape trauma syndrome is a type of post-traumatic stress disorder (PTSD) and is listed in the PTSD diagnostic category of the American Psychiatric Association's manual of recognized mental disorders as one of the crises that causes personal trauma. *Diagnostic and Statistical Mental Disorders* § 309.81 (3d Ed.1980) [hereinafter cited as DSM–III]. Rape trauma syndrome is generally accepted by the psychiatric community as a common reaction to sexual assault. Comment, *Expert Testimony on Rape Trauma Syndrome: Admissibility and Effective Use in Criminal*

*Rape Prosecutions,* 33 Am.U.L.Rev. 417 (1984); Nadelson, Notman, Zackson and Gornick, *A Follow-up Study of Rape Victims,* 139 Am.J. of Psychiatry 1266 (1982); *see also State v. Marks,* 231 Kan. 645, 647 P.2d 1292, 1299 (1982) for citation of authorities.

The issue of the admissibility of rape trauma syndrome evidence has been discussed extensively by the state criminal courts in recent years. *See generally Allewalt v. State,* 61 Md.App. 503, 487 A.2d 664 (1985); *State v. Huey,* 145 Ariz. 59, 699 P.2d 1290 (1985); *People v. Pullins,* 145 Mich.App. 414, 378 N.W.2d 502 (1985); *State v. Liddell,* 685 P.2d 918 (Mont.1984); *State v. Taylor,* 663 S.W.2d 235 (Mo. Banc 1984); *People v. Bledsoe,* 36 Cal.3d 236, 203 Cal.Rptr. 450, 681 P.2d 291 (1984); *State v. Middleton,* 294 Or. 427, 657 P.2d 1215 (1983); *State v. Marks,* 231 Kan. 645, 647 P.2d 1292 (1982); and *State v. Saldana,* 324 N.W.2d 227 (Minn.1982). Military courts have also considered the admissibility of rape trauma syndrome evidence. *United States v. Hammond,* 17 M.J. 218 (C.M.A.1984); *United States v. Tomlinson,* 20 M.J. 897 (A.C.M.R.1985); *United States v. Eastman,* 20 M.J. 948, 952 (A.F.C.M.R. 1985); and *United States v. Joseph,* CM 440014 (A.C.M.R. 19 Nov. 1981) (unpub.), *pet. denied,* 13 M.J. 243 (C.M.A.1982).

Ordinarily, evidence of rape trauma syndrome is offered through the testimony of a treating psychiatrist, psychologist or counselor experienced in the treatment of rape victims.[3] The testimony consists of a description of the stages of rape trauma syndrome, the victim's mental state subsequent to the alleged sexual assault and a conclusion that the victim exhibited the symptoms displayed by other rape trauma victims. In a small number of cases the expert has testified that based on his diag-

nosis the rape in fact occurred. *See Allewalt v. State,* 487 A.2d 664.

Not all courts have admitted rape trauma syndrome evidence and several reasons for exclusion of such evidence have developed. Some courts have held that evidence of rape trauma syndrome fails to meet the *Frye*[4] test for admissibility of scientific evidence because it is not the type of scientific evidence that "accurately and reliably determines whether a rape has occurred." *State v. Saldana,* 324 N.W.2d at 229; *People v. Pullins,* 378 N.W.2d 502 (court suggested that evidence of emotional and psychological trauma suffered by a complaining witness in a rape case may be admissible, but it should not be presented with an aura of scientific reliability unless the *Frye* test is met); *People v. Bledsoe,* 681 P.2d 291 (admission of expert's testimony that victim exhibited symptoms of rape trauma syndrome and was therefore raped was error because the testimony created an aura of special reliability and trustworthiness). At least two state courts have held that admission of rape trauma syndrome evidence invades the jury's province to decide the existence or lack of consent. *State v. Saldana,* 324 N.W.2d 227; *Allewalt v. State,* 487 A.2d 664. Some courts have determined that although rape trauma syndrome evidence is relevant it should be excluded because the probative value of such evidence may be substantially outweighed by the danger of unfair prejudice. *United States v. Tomlinson,* 20 M.J. 897; *State v. Taylor,* 663 S.W.2d 235 (court concluded that witness may testify that victim exhibited characteristics consistent with a traumatic stress reaction, such as rape, but that the use of the term "rape trauma syndrome" improperly suggests the syndrome may only be caused by rape). Finally, several courts have been skeptical of

---

**3.** We believe the better practice would be to have the treating medical personnel testify as to the victim's emotional, physical and mental state and have another individual, properly qualified as an expert, testify as to the various aspects of rape trauma syndrome and whether the victim's symptoms are consistent with rape trauma syndrome.

**4.** *Frye v. United States,* 293 F. 1013 (D.C.Cir. 1923). Before scientific evidence is admitted, an expert must testify that in his or her opinion the scientific principle or discovery involved is valid and reliable, and that its validity and reliability are generally accepted within the particular field or speciality to which it belongs.

rape trauma syndrome evidence because the testimony of the expert witness made an evaluation of the victim's veracity and buttressed her credibility. *Allewalt v. State,* 487 A.2d 664; *State v. Taylor,* 663 S.W.2d 235.

Other courts have articulated persuasive arguments for the admission of rape trauma syndrome evidence. The Kansas Supreme Court has stated:

An examination of the literature clearly demonstrates that the so-called "rape trauma syndrome" is generally accepted to be a common reaction to sexual assault. [Citations omitted.] As such, qualified expert psychiatric testimony regarding the existence of rape trauma syndrome is relevant and admissible in a case such as this where the defense is consent.

*State v. Marks,* 647 P.2d at 1299.

The expert's opinion, the Court stated, does not invade the province of the jury. "It is merely offered as any other evidence, with the expert subject to cross-examination and the jury left to determine its weight." *Id.,* 647 P.2d at 1299.

Following the *Marks* decision, the Supreme Court of Montana held that the testimony of a psychiatric nurse concerning the victim's acute depression and severe headaches following a sexual assault was relevant and admissible as an aid to the jury where the issue was consent. *State v. Liddell,* 685 P.2d 918. The Court stated:

[the testimony] reflects the manifestations of distress which may be exhibited by a person who has been subjected to severe trauma. Rape is only one such severe trauma which can cause the symptoms. We believe that skilled direct and cross-examination of an expert in this area can assist the jury in determining whether, in fact, the victim consented to the act.

*Id.,* 685 P.2d at 923. The evidence was admissible under Montana Rule of Evidence 702 which states:

[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

We note that Mont.R.Evid. 702 is identical to Military Rule of Evidence 702, which governs the admissibility of expert testimony in the military. The test for admissibility under MRE 702 is whether the expert's testimony is helpful to the trier of fact. There is no requirement that the expert's testimony is absolutely necessary or that the testimony be based on scientific principles that are generally accepted in the scientific community. Saltzburg, Schinasi and Schlueter, Editorial comment, *Military Rules of Evidence Manual* at 324 (1981). We have some doubts, therefore, of the continued applicability of the *Frye* test as concerns this issue. See *United States v. Lusk,* 21 M.J. 695, 699 (A.C.M.R.1985), and the cases cited in this opinion holding rape trauma evidence inadmissible on *Frye* grounds.

Arizona has considered the admissibility of psychiatric testimony of rape trauma syndrome and found such evidence to be admissible where the issue was consent. *State v. Huey,* 699 P.2d 1290. In that case the testimony of a psychiatrist centered on the general observations of stress exhibited by the victim. The expert did not use the term "rape trauma syndrome" nor did he classify the victim's reactions as a unique psychological response to a sexual assault. The court, however, citing *Marks* and *Liddell* favorably, stated, "[I]t does not follow ... that evidence of a rape trauma may not be admissible when there is evidence of the intercourse and the defendant alleges consent." *Id.,* 699 P.2d at 1294.

The Oregon state courts have had several opportunities to discuss the admissibility of rape trauma syndrome. In *State v. Harwood,* 45 Or.App. 931, 609 P.2d 1312 (1980), a defendant convicted of raping his daughter complained that the testimony of a social worker invaded the province of the jury to determine witness credibility. The social worker testified that the victim's be-

**775**

havior subsequent to the sexual assault was consistent with the behavior displayed by sexually abused children. The court held that such evidence was properly admitted because the average juror would not have experience dealing with sexually abused children and the testimony would, therefore, be helpful. Following *Harwood*, the Oregon Appellate Court in *State v. Middleton*, 58 Or.App. 447, 648 P.2d 1296, held that the testimony from a counselor that the victim's behavior was consistent with children who had complained of sexual molestation was admissible. The court recognized that the evidence did bear some relationship to the question of the victim's credibility, but that the testimony did not vouch for the veracity of the victim. The Appellate Court's decision was upheld by the Supreme Court of Oregon in *State v. Middleton*, 294 Or. 427, 657 P.2d 1215 (Or. 1983). The court noted that generally speaking, expert testimony offered by the prosecution tended to support the credibility of a complaining witness and that it was reasonable to assume that if the jury believes the expert, they are more likely to believe the victim's story. The court was adamant, however, that the expert may not give an opinion on whether he believes the victim is telling the truth. Moreover, there are sufficient precautions available at trial to ensure that jurors are not overly impressed by the "aura of reliability" of expert testimony. Firstly, the trial court must find that the witness is an expert. Secondly, the subject must be a proper one for expert testimony. Thirdly, the testimony must be relevant. Fourthly, opposing counsel has the opportunity to discredit the testimony by aggressive cross-examination. Lastly, an instruction by the military judge can place the evidence in proper perspective.

### III

As we previously noted, several recent military court decisions have considered the admissibility of rape trauma syndrome evidence. Although not specifically identified as rape trauma syndrome, such evidence has been admitted on the merits in a judge alone trial, *United States v. Joseph*, CM 440014 (A.C.M.R. 19 Nov. 1981); specifically admitted as rape trauma syndrome evidence in aggravation in a trial before members, *United States v. Hammond*, 17 M.J. 218; found inadmissible where the witness failed to qualify as an expert, *United States v. Eastman*, 20 M.J. 948; and found inadmissible under the circumstances in a trial on the merits before members, *United States v. Tomlinson*, 20 M.J. 897. It is thus apparent that the issue of admissibility of rape trauma syndrome evidence is unsettled not only in military practice but generally in criminal law.

Notwithstanding the unsettled nature of this issue, we have determined that it is appropriate to admit such evidence. Our decision is guided by several factors. We are convinced there is sufficient data available to support the existence of rape trauma syndrome. The authorities set out in this opinion together with the testimony of the psychiatrist establish to our satisfaction that rape trauma syndrome is officially recognized by the psychiatric community as valid and reliable, and is generally accepted as a valid scientific principle. Thus, we conclude that rape trauma syndrome evidence meets the requirements for admissibility under the *Frye* test.

We believe that rape trauma syndrome evidence will assist the trier of fact in determining the issue of consent. This would be particularly true in trials involving court members where such members would likely have little or no personal experience with victims of rape. Faced with a factual situation like the one before us, where there are no eyewitnesses to the assault nor apparent physical injuries suffered by the victim that would suggest force, the admission of rape trauma syndrome evidence serves as a helpful tool by providing the factfinders with knowledge regarding a victim's psychological reactions to an alleged sexual assault. The evidence is thus clearly admissible under MRE 702.

The relevance of the expert's testimony is unquestionable. Military Rule of Evi-

dence 401 establishes a low threshold of relevance. *See United States v. Tomlinson*, 20 M.J. at 900. As the Court stated in *Tomlinson*:

The existence of psychological or physiological symptoms in a witness which correspond to a traumatic stress reaction is probative of the issue that the witness suffered a traumatic experience.

*Id.* at 900. Moreover, we recognize that this is a matter properly within the discretion of the military judge. *See United States v. Mustafa*, 22 M.J. 165 at 168 (CMA 1986); *United States v. Snipes*, 18 M.J. 172, 178 (C.M.A.1984). In the absence of a clear abuse of discretion we should not disturb his determination.

In our judgment, the importance of a proper limiting instruction concerning the testimony of an expert witness is paramount. A proper instruction, such as the one in the case *sub judice*, serves the purpose of ensuring that the testimony does not invade the province of the members. Such an instruction prevents the possibility that the members might be overly impressed by either the "aura of reliability" of the testimony or the credentials of the expert and can serve to place the expert testimony in proper perspective. Moreover, the selection procedure for court members utilized under the Uniform Code of Military Justice is governed by a list of criteria that requires that only the best qualified will sit in judgment of others.[5] This unique method of jury selection ensures that the "asserted vagaries of juries" found in other criminal justice systems are minimized in the military. *Schick v. Reed*, 419 U.S. 256, 260, 95 S.Ct. 379, 382, 42 L.Ed.2d 430 (1974); *see also United States v. Matthews*, 16 M.J. 354, 383 (C.M.A.1983) (Fletcher, J., concurring in the result); *United States v. Lusk*, 21 M.J. 695, 699, n. 2 (A.C.M.R.1985); *United States v. Salis-*

*bury*, 50 C.M.R. 175, 189 (A.C.M.R.1975) (Donahue, J., dissenting). In sum, we are convinced that members of a military court-martial are perhaps better qualified to properly use this form of evidence.

Unlike our brothers who decided in *Tomlinson* that admission of rape trauma syndrome evidence in that case constituted error under MRE 403,[6] we are satisfied that rape trauma syndrome "has a high level of probative value in rape trials in which the defense is consent, [therefore] only compelling reasons should justify its exclusion." Comment, *Expert Testimony on Rape Trauma Syndrome: Admissibility and Effective Use in Criminal Rape Prosecutions*, 33 Am.U.L.Rev. at 453. We find no compelling reason to exclude the challenged evidence now before us. To the contrary, the proper adjudication of rape prosecutions before military juries may dictate that they be informed of available scientific evidence concerning the psychological aspects of the crime of rape. *See United States v. Hammond*, 17 M.J. at 220. This is particularly important because in many instances objective physical evidence of non-consent and resistance are absent because the rape victim "perceives the confrontation as life-threatening ... [and] the main concern of the victim becomes survival, not avoidance of intercourse." John L. Ross, *The Overlooked Expert in Rape Prosecutions*, 14 U. of Toledo L.Rev. at 719. We believe the case *sub judice* falls within the parameters discussed above and that the testimony of Doctor Thompson had substantial probative value.

We hold that rape trauma syndrome evidence is admissible on the merits on the issue of consent when presented by a properly qualified expert and accompanied by a

---

5. Article 25(d)(2), UCMJ, 10 U.S.C. § 825(d)(2), states in part: "[T]he convening authority shall detail as members thereof such members of the armed forces as, in his opinion, are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament...."

6. MRE 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

proper limiting instruction by the military judge.[7]

Accordingly, the findings of guilty and sentence are affirmed.

Judge PAULEY and Judge De GIULIO concur.

---

**7.** We also note that the government's evidence in this case is overwhelming. Given the victim's testimony, appellant's inconsistent statements and the facts of this case, we find that admission of the expert's testimony, were it to be error, is harmless beyond a reasonable doubt.