# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**F.D. MITCHELL, J.A. FISCHER, K.M. MCDONALD**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

**v.**

**JERAMIE M. HUTCHINSON**
**INFORMATION SYSTEMS TECHNICIAN**
**SECOND CLASS (E-5), U.S. NAVY**

**NMCCA 201400022**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 29 August 2013.
**Military Judge:** Col Daniel Daugherty, USMC.
**Convening Authority:** Commander, Navy Region Mid-Atlantic, Norfolk, VA.
**Staff Judge Advocate's Recommendation:** CDR S.J. Gawronski, JAGC, USN.
**For Appellant:** Maj John Stephens, USMC; LT David Dziengowski, JAGC, USN.
**For Appellee:** Maj Crista Kraics, USMC.

**4 March 2015**

---------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------

THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.

PER CURIAM:

A general court-martial consisting of officer and enlisted members convicted the appellant, contrary to his pleas, of one specification of rape in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920. The members sentenced the appellant to confinement for 3 months and a bad-conduct

discharge. The convening authority (CA) approved the sentence as adjudged and, except for the bad-conduct discharge, ordered it executed.

The appellant raises three assignments of error (AOE): (1) the military judge abused his discretion when he admitted the testimony of an expert in the field of sexual assault trauma response; (2) the evidence is legally and factually insufficient; and (3) an appearance of unlawful command influence infected his court-martial.[1]

After careful consideration of the record of trial, the parties' pleadings, and the appellant's assignments of error, we conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ.

## Background

The appellant and Petty Officer JB (hereinafter JB) met on a dating website and exchanged communications for approximately two years prior to meeting in March 2013. They went hiking on their first date and JB testified that during the hike they flirted, held hands, and kissed. JB further testified that she rebuffed the appellant's additional physical advances and let him know her boundaries in that regard.

Following their hike, the appellant and JB returned to his house and once inside, JB followed the appellant upstairs to his bedroom. JB testified that she then engaged in further kissing with the appellant, however she told the appellant that she wanted her clothes to remain on. JB testified that the appellant responded by undressing himself and asking her to rub his penis. JB testified that she eventually complied with the appellant's request, but when he tried to take off her pants she told him "no."[2] JB testified that the appellant then flipped her onto her stomach, placed his hand on the back of her neck, and tried to pull off her pants. She testified that he then turned her onto her back, placed his hand on her neck, and pulled off her pants. She stated that he rubbed her vagina with his fingers and violently thrust his penis into her mouth while

---

[1] We find no merit to AOE III. *United States v. Clifton*, 35 M.J. 79, 81-82 (C.M.A. 1992).

[2] Record at 399.

grabbing her hair.[3]  JB further testified that the appellant then rubbed his penis on her vagina while she was saying "[n]o, no, no" and then penetrated her vagina with his penis while choking her.[4]  JB stated that after thrusting between twelve and fifteen times and after she kept telling him "no," the appellant stopped and then masturbated and ejaculated on her stomach.[5]

Afterwards, the appellant and JB went downstairs, and JB sat next to the appellant on a couch for ten to fifteen minutes. JB testified that she stayed there because she "was trying to find the best way to leave without making a scene."[6]  The appellant's roommate came home and JB left shortly thereafter.[7] JB testified that on her way home she received a text message from the appellant asking her if she had fun and she responded that she did have fun at the park but he was a "bit forceful."[8] JB stated that the appellant then sent her a text message saying, "I'm sorry.  I must have misread your signs."[9]

The following day, JB's supervisor found her crying while she manned her post at work.  Feeling her emotional state rendered her unfit for duty, JB's supervisor removed JB from her post and she then requested to speak with a chaplain.  Shortly thereafter, JB filed an unrestricted sexual assault report and underwent a physical examination.  Local authorities assumed cognizance of the investigation and Investigator Nordstrom of the Groton Police Department went to the appellant's home to question him regarding JB's allegations.  In response to Investigator Nordstrom's questions, the appellant admitted to engaging in sexual activity with JB, however he denied engaging in intercourse with her and maintained all sexual activity was consensual.  Inspector Nordstrom testified that the appellant admitted to pulling JB's hair and putting his hand across JB's

---

[3] *Id.* at 400-01.

[4] *Id.* at 401.

[5] *Id.* at 402.

[6] *Id.* at 403.

[7] The appellant's roommate testified at trial that JB did not have any visible signs of concern or any physical indicators that she had been assaulted.

[8] *Id.* at 436.

[9] *Id.*

throat during the sex acts because, "[s]he's one of those girls that liked it."[10]

Additional facts necessary for the resolution of particular assignments of error are included below.

**Expert Testimony**

The appellant first argues the military judge abused his discretion in admitting expert testimony of Doctor Rachel Tambling, Ph.D., on victim trauma and counterintuitive victim behavior because the expert's testimony did not assist the trier of fact and was not relevant. He asserts that, as a result, the expert's testimony impermissibly bolstered the Government's case.

The trial defense counsel submitted a timely motion to exclude this expert testimony.[11] The military judge denied the motion and provided an extensive analysis of the factors outlined in *United States v. Houser,* 36 M.J. 392, 397 (C.M.A. 1993).[12] Following *voir dire*, the trial defense counsel asked the military judge to reconsider the admissibility of Dr. Tambling's testimony in light of the members' training on sexual assault and their responses during *voir dire* that they did not expect victims to act in a particular manner.[13] The military judge denied the defense's motion.[14]

During the Government's case in chief, Dr. Tambling was called as an expert witness in the areas of "victim trauma

---

[10] *Id.* at 498.

[11] Appellate Exhibit XVI.

[12] AE XXIII. The *Houser* factors include:

> (1) "the qualifications of the expert," MIL. R. EVID. 702;
> (2) "the subject matter of the expert testimony," MIL. R. EVID. 702;
> (3) "the basis for the expert testimony," MIL. R. EVID. 703;
> (4) "the legal relevance of the evidence," MIL. R. EVID. 401-402;
> (5) "the reliability of the evidence," MIL. R. EVID. 401; and
> (6) "whether the probative value of the testimony outweighs other considerations," MIL. R. EVID. 403.

*Houser*, 36 M.J. at 397.

[13] Record at 356-57.

[14] *Id.* at 363.

4

related to sexual assaults, [and] victim behavior and response during and after a sexual assault."[15] Dr. Tambling testified concerning the symptoms of post-traumatic stress disorder (PTSD), explanations for counterintuitive behavior of sexual assault victims, and common victim responses to sexual assault.[16] Dr. Tambling did not provide any diagnosis of JB or offer an opinion as to whether she believed JB was a victim of sexual assault.

After Dr. Tambling's testimony, the military judge gave the members the following instruction:

> The members are reminded that this witness and these types of witnesses work with people who report claims of sexual trauma. This witness has no independent knowledge of the truth or the veracity of any report that she receives.

> You must consider this fact when you determine what, if any, weight to give to the testimony of these types of witnesses.[17]

During the defense case in chief, Dr. Thomas Grieger, M.D., a clinical psychiatrist, was called as an expert in the field of behavioral science research. Dr. Grieger testified regarding the research methodologies used in the studies likely relied upon by Dr. Tambling, as well as the limitations of such studies in the context of assisting a trier of fact in a criminal trial.

While instructing the members on findings, the military judge stated:

> You heard the testimony of Doctor Rachel . . . Tambling, PhD; and the testimony of Doct[]or Thomas Grieger, M.D. They are known as expert witnesses because their experience, knowledge, skill, training, or education may assist you in understanding the evidence or in determining a fact in issue. You are not required to accept the testimony of an expert witness or give it more weight than the testimony of an ordinary witness. You should, however, consider

---

[15] *Id.* at 466.

[16] *Id.* at 458, 467-77.

[17] *Id.* at 492-93.

their qualifications on the subjects to which they testified.

Only you, the members, determine the credibility of the witnesses and what the facts are in this case. No expert or other witness can testify that the alleged victim's account of what occurred is true or credible, or that the expert believes the alleged victim. To the extent that you believed Dr. Tambling or Investigator Nordstrom testified or implied that she believed the alleged victim, or that a crime occurred, or that the alleged victim is credible, you may not consider that as evidence.[18]

We review a military judge's ruling admitting expert testimony for an abuse of discretion. *United States v. Norris*, 55 M.J. 209, 212 (C.A.A.F. 2001) (citations omitted).

PTSD and "rape-trauma-syndrome testimony by a properly qualified expert may be admissible to assist the trier of fact to understand the evidence." *Houser,* 36 M.J. at 398-99; *United States v. Savage,* 30 M.J. 863, 865 (N.M.C.M.R. 1990) (holding that "an expert on PTSD may testify as to the psychological or emotional trauma that an alleged rape victim exhibits and whether the exhibited trauma is consistent with the history given by the victim"); *United States v. Carter,* 22 M.J. 771, 776-77, (A.C.M.R. 1986), *aff'd*, 26 M.J. 428 (C.M.A. 1988) (holding "rape trauma syndrome evidence is admissible on the merits on the issue of consent when presented by a properly qualified expert and accompanied by a proper limiting instruction by the military judge"). An expert may testify as to what symptoms are found among those who have suffered from sexual abuse and whether the victim has exhibited these symptoms. *See United States v. Harrison*, 31 M.J. 330, 332 (C.M.A. 1990) (allowing such evidence in child sexual abuse cases). However, the expert cannot "opine as to the credibility or believability of victims or other witnesses," *United States v. Birdsall*, 47 M.J. 404 (C.A.A.F. 1998) (citations omitted), or as to whether the expert believes the rape actually occurred, *Savage,* 30 M.J. at 866.

At trial, the defense highlighted several of JB's counterintuitive behaviors during and after the alleged sexual assault as evidence that she consented. Dr. Tambling's testimony was used to rebut those claims. She did not testify

---

[18] *Id.* at 706.

that she believed JB was telling the truth concerning the rape allegation, or that the alleged rape occurred. Such testimony would have been improper. She instead testified to common victim responses and the symptoms of PTSD. Such testimony has been accepted in cases involving allegations of rape or other sexual misconduct. *See Savage,* 30 M.J. 863, 865; *Carter*, 22 M.J. at 772; *see generally United States v. Johnson*, 35 M.J. 17, 19 (C.M.A. 1992).

Moreover, the military judge permitted the defense to call Dr. Grieger to counter Dr. Tambling's testimony and instructed the members concerning the limited use of Dr. Tambling's testimony immediately after she testified and again during instructions on findings. We are confident that the members understood and followed the military judge's instructions.[19] *See Carter*, 22 M.J. at 776.

In this case we find that the military judge properly limited Dr. Tambling's testimony, that she did not exceed those limits while testifying, and that the military judge did not abuse his discretion in admitting this evidence. *See Houser,* 36 M.J. at 397. We are not persuaded by the appellant's assertion that the members' sexual assault training[20] as well as their responses to defense counsel's *voir dire* questions on victim reactions[21] mandates a different conclusion regarding the admissibility of Dr. Tambling's testimony.

### Legal and Factual Sufficiency

The appellant next claims that the evidence is legally and factually insufficient to support the members' guilty findings, specifically that the Government did not prove the element of unlawful force beyond a reasonable doubt.

The test for legal sufficiency is whether, considering the evidence in the light most favorable to the Government, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *United States v. Turner*, 25

---

[19] We note the members acquitted the appellant of the only case-specific conduct to which Dr. Tambling referred in her testimony: the allegation of the appellant's forcible penetration of JB's mouth with his penis.

[20] All of the members indicated that they received some form of sexual assault training within six months of the court-martial. Record at 220.

[21] During *voir dire* the members indicated that they held no preconceived beliefs regarding victim response to trauma, generally, or sexual assault trauma, specifically.

M.J. 324, 325 (C.M.A. 1987); *United States v. Reed*, 51 M.J. 559, 561-62 (N.M.Crim.Ct.App. 1999), *aff'd*, 54 M.J. 37 (C.A.A.F. 2000); *see also* Art. 66(c), UCMJ. The test for factual sufficiency is whether, after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses, this court is convinced of the appellant's guilt beyond a reasonable doubt. *Turner*, 25 M.J. at 325; *see also* Art. 66(c), UCMJ. Proof beyond a reasonable doubt does not mean that the evidence must be free from conflict. *United States v. Goode*, 54 M.J. 836, 841 (N.M.Ct.Crim.App. 2001). The fact finder may believe one part of a witness' testimony and disbelieve another. *Id.* When weighing the credibility of a witness, this court, like a fact finder at trial, examines whether discrepancies in witness testimony resulted from an innocent mistake, such as a lapse of memory, or a deliberate lie. *Id.* at 844.

Forcible rape under Article 120(a), UCMJ, is committed when the accused (1) commits a sexual act upon another person by (2) using unlawful force against that other person. MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Part IV, ¶ 45. In this case, "sexual act" means the penetration of JB's vulva with the appellant's penis. "Unlawful force," as the military judge properly instructed, "means an act of force done without legal justification or excuse."[22] Finally, "force" means "the use of such physical strength or violence as is sufficient to overcome, restrain, or injure a person; or inflict physical harm sufficient to coerce or compel submission by the alleged victim."

Here, there was sufficient evidence on the record to prove every element of rape beyond a reasonable doubt, including the element of unlawful force. JB testified that the appellant forcibly flipped her over, put his hand on her neck so that she could not breathe, and then removed her pants, despite the fact that she was telling him not to do so. She also testified that the appellant penetrated her vagina with his penis while choking her while she was saying "no." The appellant's admissions to investigators that he pulled JB's hair and put his hand on her throat corroborate her testimony on the issue of force.

After carefully reviewing the record of trial and considering the evidence in the light most favorable to the prosecution, we are convinced that a reasonable fact finder could have found all the essential elements beyond a reasonable

---

[22] Record at 692.

8

doubt.  Furthermore, after weighing all the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced beyond a reasonable doubt of the appellant's guilt.

## Conclusion

Accordingly, the findings and the sentence as approved by the CA are affirmed.

For the Court


R.H. TROIDL
Clerk of Court